# EPHRAIM SAVITT
*Attorney at Law*

260 MADISON AVENUE  
SUITE 2200  
NEW YORK, NEW YORK 10016

(212) 679-4470  
Fax: (212) 679-6670  
EPHRAIM@SAVITTESQ.COM

August 26, 2010

*By Telefax 973-645-3097*  
Honorable Mark Falk  
U.S. Magistrate Judge  
United States Courthouse  
50 Walnut Street  
Newark, NJ 07102

Re: **US v. Eliyahu Weinstein, Mag No. 10-7115 (ES)**

Dear Judge Falk:

I am respectfully submitting an outline of my arguments for the pretrial release on bail for my client Eli Weinstein. I appreciate Your Honor's courtesy in reviewing this submission at this late hour.

A. Background:

Mr. Weinstein is the subject of a criminal complaint alleging mail and wire fraud offenses in relation to $6 million in claimed loses by a lender of funds to Mr. Weinstein for real estate investment purposes. The U.S. Attorney press release on August 12, 2010, when Mr. Weinstein was arrested, alleged that he is responsible for $200 million in losses by various "victims." These "victims", in reality, are unregulated money lenders and "investors", who had collected funds from other "investors", and who charged Mr. Weinstein high rates of interest, often well beyond the statutory usury level, in order to make millions of dollars from real estate investments that Mr. Weinstein found. All of those "investors" made millions of dollars in that fashion, some tens of millions of dollars, in many instances in violation of the usury laws and tax reporting requirements.

After the real estate market collapsed over two years ago, everyone began to lose money. What the government terms a "Ponzi Scheme" is only one side of the coin. The flip side is that the market collapse led to millions of dollars lost, not only by the "investors," but by the shareholders of the mega-financial firms that dominated Wall Street for generations and, on a broader level, the county and the entire world.

A number of civil lawsuits were brought by "investors" in various jurisdictions. A $6 million judgment on consent was entered against Weinstein in NYS Supreme Court. Recently, a $35 million judgment was entered against him after trial in federal court in Philadelphia. An $80 million lawsuit is pending against Weinstein in this district in Trenton. Settlement negotiations continued for months before Weinstein's arrest. A settlement with the plaintiff in that case was very near to completion just two weeks before Weinstein's arrest. Vacation schedules on the

other side and nitpicking by them over agreement provisions prevented a $1 million down payment and a signed settlement agreement for the return of the loans that the plaintiff, almost entirely using the funds of others, extended to Mr. Weinstein.

The $200 million "Ponzi" amount in the government's press release is premised on the collective claims of the "investors" suing Weinstein in various civil litigations. In recent depositions, the "investor" on whose claims the present complaint is premised, managed to contradict and perjure himself on well over a dozen occasions during the span of less then three hours of testimony. I know; I was present for that spectacle just last week.

### B. The Strength of the Government's Case:

For purposes of this proceeding, the government's contentions must be accepted by the Court as true. I do not challenge that well established principle; I simply question the government's argument, both at the initial appearance before Judge Salas on August 12th and before Judge Schwartz last week on August 17th, that the case against Weinstein is "overwhelming." Plainly, it is a case rooted in the claims of "investors" who had gladly reaped the benefits in good times, and sued him when the good times ended. When put to the test of cross-examination, one "investor" clearly committed perjury. A former partner of Weinstein, whose claims are incorporated in the complaint, also committed perjury repeatedly at his deposition. These are contentions we can easily prove.

### C. The Bail Proposal:

In the appearance last week before Judge Schwartz, I proposed a $5 million bond, to be secured by real property, with a special condition of home confinement and electronic monitoring. At the time, although some prospective sureties were present in the courtroom, they had not been vetted either by pretrial services or the government. Plus, there were no completed title and lien searches for any properties to be posted as security for the bond.

In the past week, all that has been fixed. All the sureties and properties to be posted have been vetted by pretrial services and disclosed to the government. We are offering 11 sureties, including Weinstein's parents, brother, sister, wife, brother-in-law and sister-in-law. Among those sureties, they have posted two homes with a combined equity value of over $1.5 million.

Additionally, 4 of the other sureties are a respected Rabbi in the community, a close friend who Weinstein took off the streets, provided a roof over his head and established as a married and productive community member, as well as two businessmen who are posting properties that they own jointly in Brooklyn with an aggregate equity worth of nearly $3 million. In total, the equity posted to secure the $5 million bond is in excess of $4 million.

### D. The Government's Prior Bail Arguments:

The government's principal objection to the release of my client is that he poses a risk of flight. The indicia of this risk, according to the government, are the amount of monies involved in this case, Weinstein's frequent travel and the advisory Guidelines for a $200 million fraud. In the initial arraignment before Judge Salas, the government had also urged a "danger to the

2

community" grounds for detention. In the second bail appearance last week before Judge Schwartz, that latter argument was not even proffered (and for very good reason).

The government also did not repeat its earlier "multiple passports" contention (for which there is no basis other than the spurious report by or on behalf of one of the "investors"). Instead, it was replaced by the argument that Weinstein had a "fat passport."

Finally, the government argued that Weinstein's Guidelines level is off the charts at a level 45, whereas mandatory life guidelines for murderers and drug kingpins are below that at a level 43.

E.  There is no risk of flight:

Weinstein indeed traveled abroad extensively during the past 2 years. Nine of those times were round trips to Israel. Most of the trips were for business purposes to seek real estate investment opportunities that would bring profits, including high rates of return for complaining "investors." Some of the trips, specifically his most recent trip to Israel when he returned on August 6th, the Friday before his arrest, were for social reasons, in that instance to attend a wedding.

True, Weinstein's passport is full of entry and return stamps, as the government pointed out. But the fact is that Weinstein always returned home. He always returned home despite the fact that for over 2 years, the "investors" who were suing him threatened to go to the FBI unless he paid them the monies they were demanding. Months before his arrest, we had proof that, in fact, "investors" and /or their lawyers were meeting with FBI agents. And they never made that a secret; some even promised Weinstein that they would make a federal prosecution go away as long as they were paid.

Weinstein knew that he would face criminal charges at some point, and some point soon. Indeed, he retained me several months ago principally for that reason. On his return from Israel August 6th, he was detained for nearly 2 hours without explanation by Homeland Security agents. Without explanation, they told him he was free to leave.

Weinstein reported that to me later that day. We both knew that the criminal case was coming. It came when he was arrested at his home 6 days later. The agents had a search warrant to take everything that looked like a document, computer and valuable jewelry. They took truckloads of items, including children's toys, sacramental objects and the eyeglasses worn by his wife. No multiple unexpired passports or false identification documents were found in an exhaustive search lasting the entire day. The reason: no such documents ever existed.

The Bail Reform Act, 18 U.S.C. § 3142, provides for certain statutory presumptions that a defendant poses a flight risk or a danger to the community. Weinstein does not fit even remotely into any of those provisions. He had never been arrested previously. He certainly has no history of flight. Instead, he has a history of returning to his only home in Lakewood, N.J. to be with his wife and 7 young children, the eldest of whom is barely a teenager, and the youngest of whom is barely 2 years old. He is neither charged with a capital offense nor narcotics trafficking nor a crime of violence. The charges against him do not carry a statutory maximum of life imprisonment. In short, Weinstein cannot be pegged, as the government would prefer, as

3

fitting into any of the statutory conditions for which the bail statute suggests that detention would be appropriate.

To the contrary, the bail package being proposed removes any serious argument that Weinstein poses an actual risk of flight and there are literally no grounds for the government to resurrect the dangerousness contention.

F. The Extortion:

Finally, there is another serious element that militates strongly in favor of Weinstein's release. On his first day in Hudson County Correctional Center, he was approached by a gang member who demanded money payments in return for "protection" by fellow gang members. Perversely, that extortionist was recently released on bail, while the extortion victim is fighting for his right to be released on bail. A money payment was recently made to maintain the "insurance coverage" so that no harm would come to anyone, either in the inside or on the outside.

With the quick and able assistance of the U.S. Attorney's office and the U.S. Marshals, Weinstein was removed from the danger area the day this matter was reported by me to the authorities last Wednesday, August 18th. The threats were verified and, I have been advised, are under investigation.

Obviously, Weinstein, as an alleged $200 million "Ponzi schemer," provides an appealing target to extortionists and other strong-arm thugs in detention. There are two remedies for this. One is to put him in an isolation unit for the next 2 years or so of pretrial detention, thereby making my role and his, as a defendant in a serious criminal case, a complete nightmare. The other, and the only reasonable and proper alternative, is to allow him to be released on restricted bail conditions, such as those that we are proposing, because he is eminently bailable under the criteria of the bail statute. That will insure that my client and I can prepare an adequate defense for him to the charges in this case or otherwise reach a disposition of the charges against him.

I thank Your Honor for your courtesy and consideration.

Respectfully submitted,

Ephraim Savitt

ES: tp

Cc:   *To be filed by ECF*
      AUSA Zach Intrater
      Pretrial Services Officer
           Stephanie Farruggia
      Eli Weinstein