

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

January 28, 2013

Robert J. Cleary
Member of the Firm
d 212.969.3340
f 973.274.3299
rjcleary@proskauer.com
www.proskauer.com

**Via Facsimile and Electronic Filing**

Hon. Tonianne J. Bongiovanni
United States Magistrate Judge
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *United States v. Weinstein*, 11 Cr. 701 (JAP)

Dear Judge Bongiovanni:

      This firm represents Eli Weinstein in the above-referenced matter. We respectfully submit this letter in reply to the government's January 22, 2013 response to Mr. Weinstein's bail modification requests. Dkt. No. 76.

      The government opposes Mr. Weinstein's requests because, it alleges, "Mr. Weinstein has not been compliant with his bail conditions while on pretrial release." *Id.* at 1. As demonstrated herein, that claim is meritless. Mr. Weinstein has not engaged in any criminal conduct while on release, completed any financial transactions in violation of his bail, or had any improper interactions with victims or witnesses. As his supervisory Pretrial Services Officer can attest, Mr. Weinstein has fully complied with stringent bail conditions since his arrest nearly two-and-one-half years ago. He now requests that his conditions of release be modified in three discrete and reasonable respects in order to prepare for sentencing and to meet his restitution obligation under the plea agreement. The government's response provides no valid reason why this Court should not grant Mr. Weinstein's requests. Instead, it is littered with irrelevant and false accusations that should be outright rejected.

**A.**    **Mr. Weinstein Has Fully Complied with the Conditions of his Release.**

    **1.**    **Mr. Weinstein Has Not Engaged in Criminal Conduct While on Release.**

      The government claims that almost two years ago, while on release, Mr. Weinstein engaged in criminal conduct involving an individual identified as M.R. *See* Dkt. No. 38. This is precisely the same, stale allegation that the government raised in its motion to revoke Mr. Weinstein's bail in September 2011, and which it later withdrew. *See* Dkt. No. 32 at 2-5. It is remarkable that the government presents it again at this late date as if it has somehow improved with age.

Proskauer»

Hon. Tonianne J. Bongiovanni
January 28, 2013
Page 2

Just as they were then, these accusations are entirely false. As Mr. Weinstein demonstrated in his opposition to the government's September 2011 motion, his interactions with M.R. were neither fraudulent nor in violation of his then-governing bail conditions. *See* Dkt. No. 33 at 2-3. The true facts are that Mr. Weinstein was represented by counsel in all discussions with M.R.; M.R. neither presented himself as a victim (even when asked) nor did Mr. Weinstein believe M.R. to be one at the time those discussions occurred; and M.R. was repaid in full in July 2011. Mr. Weinstein vigorously contests any allegations concerning M.R., and is fully prepared to prove that the government's claim is false at any hearing this Court may order.

### 2. Mr. Weinstein Has not Engaged in Financial Transactions in Violation of His Bail Conditions.

Mr. Weinstein has engaged in no financial transactions that violate the Consent Order Modifying Conditions of Release dated October 18, 2011 (the "Consent Order"). Dkt. No. 37. The Consent Order requires that an approved attorney, i.e., "Special Counsel," must review and approve of certain financial transactions that Mr. Weinstein wishes to complete. *See id.* at 2. The purpose of that requirement is to ensure that such transactions are vetted by Special Counsel before they are completed. The two purported transactions identified by the government do not violate that provision.

As to the first, Mr. Weinstein has not been "'raising equity' for a purported multi-million dollar transaction." Dkt. No. 76 at 3. Although the government fails to provide any specific details as to this alleged transaction, thereby making its accusations even more suspect, Mr. Weinstein assumes that it is referring to his communications with certain individuals concerning potential investments in a medical device business venture. Mr. Weinstein's communications with those persons were limited to introducing the parties. As far as he knows, no financial transaction has occurred yet, and thus there is nothing for Special Counsel to review. If and when the parties present Mr. Weinstein with a financial transaction, he would of course have Special Counsel review it—as he has done with other transactions during the past year.

The government informs this Court that one of those unidentified associates was recently arrested in the Eastern District of New York. If Mr. Weinstein is correct about his identity, then that arrest is utterly irrelevant to this application. According to the Indictment in that case, the arrest stems from conduct that occurred in or around December 2007 through October 2008, long before Mr. Weinstein had any dealings with him, and that has nothing to do with Mr. Weinstein.

The government's second claim is equally irrelevant. It concerns a $27,000 civil dispute between Mr. Weinstein and a law firm. Mr. Weinstein denies the allegations in that complaint and intends to litigate them. But there is no conceivable way that dispute bears on this case. The government has disclaimed, on the record, intention to challenge fees paid to attorneys during the pendency of the criminal case. In fact, although the government is fully aware that

Proskauer»

Hon. Tonianne J. Bongiovanni
January 28, 2013
Page 3

Mr. Weinstein has retained several law firms since October 2011, it has never indicated that those transactions were subject to review by Special Counsel. Thus, the transaction to which the government points cannot possibly violate his bail conditions.

### 3. Mr. Weinstein Has Neither Contacted Victims in Violation of his Bail Conditions Nor Made Misstatements to Pretrial Services.

Mr. Weinstein has not contacted victims and witnesses in this case as the government claims. This also appears to be the same stale, baseless allegation that the government raised in its September 2011 motion and then withdrew. It was not until October 19, 2011 that the government finally provided Mr. Weinstein's counsel (after repeated requests) with a list of victims/witnesses whom Mr. Weinstein could contact only in the presence of counsel as set forth in the Consent Order. Prior to receiving the government's list, Mr. Weinstein never directly contacted anyone that he believed to be a witness or victim, and once he received it, he only contacted the listed persons in accordance with the Consent Order. The government alleges that Mr. Weinstein used this law firm's offices to meet with victims in violation of the Consent Order. Because the government fails to provide any details about the alleged meetings, it is difficult to make a full response, but Mr. Weinstein categorically denies the same.

As for the government's assertion that Mr. Weinstein made "misstatements to Pretrial Services," *id.* at 3, it again fails to identify any details and Mr. Weinstein is unaware of any such misstatements. Contrary to that conclusory assertion, Mr. Casale, Mr. Weinstein's Pretrial Services Officer, confirmed that Mr. Weinstein is in full compliance with his bail conditions and there have been no incidents of concern to him or his office.

### B. Mr. Weinstein Requests Reasonable and Modest Modifications to his Bail Conditions.

Mr. Weinstein requests three modest modifications to his existing bail conditions. Specifically, Mr. Weinstein requests: (1) to extend his present curfew by a mere four hours, from 8 p.m. to 12:00 a.m.; (2) to allow him to travel to and within New York City without the prior approval of Pretrial Services as he currently does in New Jersey; and (3) to allow him to make brief trips to certain domestic cities in order to enable him to recover funds for restitution.

The government's offer to allow Mr. Weinstein to travel to New York City without prior approval from Pretrial Services only if Mr. Weinstein is meeting with his attorneys is overly rigid. Requiring prior approval from Pretrial Services for Mr. Weinstein to travel to and within New York City as he currently does in New Jersey is unduly burdensome on Pretrial Services and Mr. Weinstein. Given the proximity of the two locations, and the number of people who routinely travel between them every day, it is difficult to fathom any sound reason for opposing this request.

Proskauer»

Hon. Tonianne J. Bongiovanni
January 28, 2013
Page 4

1. **The Requested Extension of his Curfew Is Modest and Necessary.**

Contrary to the government's assertion, Mr. Weinstein's present curfew fails to provide him sufficient time to meet with his attorneys. The government asserts that Mr. Weinstein and his attorneys can "put in a full work day, every day, with his current curfew." Dkt. No. 76 at 2. That is plainly incorrect. First, due to Mr. Weinstein's religious observance, he is unable to meet with his attorneys for any extended period of time on Friday or at all on Saturday while he is observing the Jewish Sabbath. Second, on all other days, there is limited time to conduct meetings because Mr. Weinstein cannot leave Lakewood until after religious services end around 7:00 a.m. Thus, Mr. Weinstein does not arrive at Proskauer's offices until 10:00 a.m. at the earliest, and he must start his commute home by 6:00 p.m. This is hardly a "full work day" for Mr. Weinstein's counsel, especially for a case as complex as his.

The government asks: "Does defendant Weinstein plan to meet with his attorneys each day at 11 p.m.?" The question should be flipped on its head. Does the government really think that allowing Mr. Weinstein to be outside his home between 8:00 p.m. and midnight increases the danger that he will commit new crimes? Mr. Weinstein is not accused of selling narcotics or committing burglaries under cover of night. The notion that this restriction is needed to protect the community is risible.

The government makes the impractical suggestion that Mr. Weinstein notify Pretrial Services on a case-by-case basis whenever he needs to extend his curfew. Mr. Weinstein would need to request this approval on a regular basis because his meetings with his attorneys already need to extend past 6:00 p.m. It is precisely for this reason that Mr. Weinstein makes his current request to extend his curfew. Further, it is often apparent only towards the end of the day that more time is needed, thus both limiting Mr. Weinstein's window to obtain prior approval from Pretrial Services and placing an additional unnecessary burden on Pretrial Services, Mr. Weinstein, and his attorneys.

At bottom, this request for an extension of his curfew is modest. The government's reflexive opposition should be rejected, particularly given the rarity of curfews altogether in financial crime cases.

2. **Mr. Weinstein Requests Approval for Limited Domestic Travel in Order to Fulfill Restitution Under his Plea Agreement.**

Mr. Weinstein requests to travel to a handful of cities in order to recoup debts owed to him, an entirely lawful activity. Mr. Weinstein needs to conduct in-person meetings with those individuals owing him money to discuss the repayment of their debts so that Mr. Weinstein may attempt to fulfill his restitution obligation under the plea agreement. Due to Mr. Weinstein's relationship with the debtors, requiring him to contact them by telephone or through a third party, as the government suggests, will not prove successful.

**Proskauer»**

Hon. Tonianne J. Bongiovanni
January 28, 2013
Page 5

      The government claims that Mr. Weinstein should be prohibited from such travel because he will commit "further fraud." *Id.* at 4. That concern is hollow. It is improbable that anyone, especially Mr. Weinstein's debtors, could be defrauded by him now that his plea is known to the world. As counsel indicated in Mr. Weinstein's Application, he has already taken four trips in 2012 without incident. The government provides no reason why the same will not be true for the requested trips, if permitted.

      The government's request that Mr. Weinstein disclose the persons owing him money and the size of those debts is inappropriate. The government has no legitimate need for this information. Mr. Weinstein has already agreed to provide Pretrial Services with detailed itineraries in advance of each trip, including the persons with whom he will be meeting, and to comply with any other conditions imposed by that office. Pretrial Services, not the government, is the appropriate supervisor of Mr. Weinstein's travel and activities under bail.

      Accordingly, we respectfully request that this Court allow Mr. Weinstein to travel to the domestic locations as requested.

      \*    \*    \*

      Accordingly, we respectfully reiterate our request that Mr. Weinstein's conditions of release be modified as follows: (1) Mr. Weinstein's curfew be extended from 8:00 p.m. to 12:00 a.m.; (2) Mr. Weinstein be permitted to travel to and within the Southern and Eastern Districts of New York in accordance with the same restrictions currently in force for his travel within the District of New Jersey; and (3) Mr. Weinstein be permitted to travel to the judicial districts containing Los Angeles, California; Melbourne and Miami/Ft. Lauderdale, Florida; Scottsdale, Arizona; Las Vegas, Nevada; and Philadelphia, Pennsylvania, subject to any telephonic reporting or other conditions imposed by Pretrial Services, in order to permit him to effectuate restitution.

      Respectfully submitted,

      *Robert J. Cleary*
      Robert J. Cleary

cc:   Zach Intrater, Esq. (via electronic filing)
      Rachael Honig, Esq. (via electronic filing)
      Gurbir Grewal, Esq. (via electronic filing)
      U.S. Attorney's Office

      Steven Casale (via electronic mail)
      U.S. Pretrial Services