**David I. Schoen**
**David I. Schoen, Attorney at Law**
**2800 Zelda Road, Suite 100-6**
**Montgomery, Alabama 36106**
**Telephone: (334) 395-6611**
**Facsimile: (917) 591-7586**
**DSchoen593@aol.com**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 11-701 (JAP) |
| Plaintiff, | Honorable Joel A. Pisano, U.S.D.J. |
| vs. | |
| ELIYAHU WEINSTEIN, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA** |
| Defendant. | **HEARING REQUESTED** |

Motion to be deemed submitted: September 16, 2013

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................... ii

INTRODUCTION ............................................................ 1

OVERVIEW ................................................................ 2

The Subpoena Is Untimely, Unreasonable, Oppressive, and Overbroad .................... 4

The Issuance of this Subpoena Violates the Department of Justice's Own Guidelines
For Subpoenas Addressed to Attorney's Fees ......................................... 9

The Subpoena Impermissibly Seeks to Compel the Production of
Confidential/privileged Client Communications ...................................... 13

      Attorney-Client Privilege ..................................................... 13
      Work Product Privilege ...................................................... 16

CONCLUSION .............................................................. 17

i

# TABLE OF AUTHORITIES

**Cases:** **Pages:**

*Caplin & Drysdale, Chartered v. U.S.*,
491 U.S. 617 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

*Hickman v. Taylor*,
329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re: Grand Jury Proceedings (Cherney)*,
898 F.2d 565 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*In re Grand Jury Proceedings (FMC Corp.)*,
604 F.2d 798 (3d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Grand Jury Proceedings (Johanson)*,
632 F.2d 1033 (3d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re: Grand Jury Proceedings*,
942 F.2d 746 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re: Grand Jury Subpoena*,
926 F.2d 1423 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Moffitt, Zwerling & Kemler, P.C.*,
864 F.Supp. 527 (E.D. Va. 1994),
*aff'd in relevant part*, 83 F.3d 660 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*

*In re: Osterhoudt*,
722 F.2d 591 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*Jaffee v. Redmond*,
518 U.S. 1, 116 S.Ct. 1923 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*Perlman v. U.S.*,
247 U.S. 7 (1917) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ralls v. U.S.*,
52 F.3d 227 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Schnur-Time Equipment, Inc. v. Big Dutchman, Inc.*,
255 F. Supp. 1020 (W.D. Mich. 1966) .............................................. *14*

*U.S. v. Harvey*,
814 F.2d 905 (4th Cir. 1987) ...................................................... *8*

*U.S. v. Mays*,
765 F.2d 329 (4th Cir. 1985) ...................................................... *3*

*U.S. v. Monsanto*,
491 U.S. 600 (1989) ............................................................ 2,3

*U.S. v. Nobles*,
422 U.S. 225 (1975) ........................................................... 13,16

*U.S. v. Stein*,
541 F.3d 130 (2d Cir. 2008) ...................................................... 17

*U.S. v. Weinstein*,
Crim. No. 13-mj-8148 (MCA) ...................................................... 4

*Upjohn Company v. U.S.*,
449 U.S. 383 (1981) .............................................................. 13

**Rules, Statutes, and Other Authorities:**

Rule 17(c)(2), Federal Rules of Criminal Procedure .................................... 2

18 U.S.C. Sec. 1963(c) ............................................................. 10

21 U.S.C. Sec. 853(c) .............................................................. 10

U.S. Attorney's Manual, Attorney Fee Forfeiture Guidelines:

Sec. 9-120.000 .............................................................. 9
Sec. 9-120.104 .............................................................. 9
Sec. 9-120.107 ............................................................. 11
Sec. 9-120.108 ............................................................. 12
Sec. 9-120.113 ............................................................. 12
Sec. 9-120.114 ............................................................. 12

David, Lengyel, Manuelian, & Sutko, *The Federal Grand Jury:*
*Practice & Procedure*, 5 Crim.L.Rev. 177 (1983) .................................... 2

Flanagan, *The Grand Jury Subpoena: Is it the Prosecutor's "Ultimate Weapon"*
*Against Defense Attorneys and Their Client?,* 13 Pepp.L.Rev. 3 (1986) . . . . . . . . . . . . . . . . . . 2

Smith, *Prosecution and Defense of Forfeiture Cases*, Sec. 13.04[1][b] . . . . . . . . . . . . . . . . . . . . 8

Winick, *Forfeiture of Attorneys' Fees under RICO and CCE and the*
*Right to Counsel of Choice: The Constitutional Dilemma and How to Avoid It,*
43 U. Minn.L.Rev. 765 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**David I. Schoen**
**David I. Schoen, Attorney at Law**
**2800 Zelda Road, Suite 100-6**
**Montgomery, Alabama 36106**
**Telephone: (334) 395-6611**
**Facsimile: (917) 591-7586**
**DSchoen593@aol.com**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 11-701 (JAP) |
| Plaintiff, | Honorable Joel A. Pisano, U.S.D.J. |
| vs. | |
| ELIYAHU WEINSTEIN, | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH SUBPOENA** |
| Defendant. | **HEARING REQUESTED** |

### INTRODUCTION

This Memorandum of Law is filed by the undersigned in support of a separately filed

Motion to Quash a grand jury subpoena the government has sent to the undersigned, seeking to

compel testimony and the production of documents related to attorney's fees paid to the

undersigned in connection with the undersigned's service as defense counsel for the Defendant

Eliyahu Weinstein in the above-captioned case. [See DE 94 – Notice of Motion]

A copy of the subpoena at issue is attached to DE 94 as Exhibit "A" and the undersigned's

Declaration setting forth certain relevant facts is attached to DE 94 as Exhibit "B." The

undersigned respectfully requests that DE 94 and its exhibits be considered as if incorporated

herein by reference.

–1–

Rule 17 © (2), of the Federal Rules of Criminal Procedure, of course, permits a person served with a grand jury subpoena the right to move to quash or modify the subpoena and gives the Court the authority to either quash or modify the subpoena if compliance would be unreasonable or oppressive. A motion to quash or modify also can be brought on grounds that compliance with the subpoena would conflict with a privilege or constitutional right. David, Lengyel, Manuelian, & Sutko, *The Federal Grand Jury: Practice & Procedure*, 5 Crim. L. Rev. 177 (1983).

## OVERVIEW

As is noted in DE 94, the grand jury subpoena in this case seeks to compel detailed information through the undersigned's testimony and the production of documents regarding monies paid to the undersigned on behalf of Mr. Weinstein for the undersigned's attorney's fee (and out of pocket expenses) from January 2012 to the present.

A great deal already has been written about the very serious issues and complications that attend the issuance of subpoenas for attorney fee information and about the actual forfeiture of attorneys' fees. *See e.g.,* Flanagan, *The Grand Jury Subpoena: Is it the Prosecutor's "Ultimate Weapon" Against Defense Attorneys and Their Client?*, 13 Pepp. L. Rev. 3 (1986); Winick, *Forfeiture of Attorneys' Fees under RICO and CCE and the Right to Counsel of Choice: The Constitutional Dilemma and How to Avoid It*, 43 U. Miami L. Rev. 765 (1989).

But many of the arguments against the use of grand jury subpoenas and the actual forfeiture of attorneys' fees were resolved in the pair of leading decisions on the subject, *Caplin & Drysdale, Chartered v. U.S.*, 491 U.S. 617 (1989); *U.S. v. Monsanto*, 491 U.S. 600 (1989), and many of the compelling arguments made by commentators were relegated to Justice Blackmun's dissenting

–2–

opinion in *Caplin & Drysdale*, 491 U.S. at 636 (joined by Justices Brennan, Marshall, and Stevens and expressly applied to *Monsanto* as well).   The Court will not be burdened with those broader important arguments here.   Rather, the focus below is on the primary concerns that apply here, as reflected in the Declaration accompanying this Motion and this Memorandum is intended just briefly to discuss some legal issues on which those concerns are based.1

The primary arguments made now in support of the motion to quash the subpoena are that: (1) the subpoena is grossly premature and its coverage and timing make it unreasonable, oppressive, and overbroad; (2) the subpoena contravenes the Department of Justice's own Manual for the issuance of such a subpoena to an attorney; and (3) compliance with the subpoena would require the production of confidential/privileged client communications, as well as testimony divulging the substance of the same.2   Each argument will be addressed briefly below.

---

1 It is not clear what the "dominant purpose" of the instant subpoena is.   It is most peculiarly timed if intended as an effort to seek the forfeiture of attorneys' fees, coming long after the fees were earned, paid, and spent (without any notice of the conduct from which the government now claims the fees are proceeds) and now seeking to compel documents and testimony regarding the source of fees, due diligence in accepting fees, and the disposition of those fees, without any finding of guilt or forfeitability, order of forfeiture, and without regard to the undersigned's bona fide purchaser status.

If, on the other hand, it is an effort to bolster the government's case against Mr. Weinstein, then it might be prohibited for that reason – with that issue turning perhaps on whether it is intended to obtain additional information against him with respect to the new charges, whether they are considered to be "new charges" or a continuation of the above-captioned case, or whether it is intended as an effort to obtain additional evidence in the above-captioned case.

In either case, such an inquiry also might implicate considerations of the propriety of attempting to use the defense attorney and compelled testimony and production from the defense attorney to obtain such additional information.

This Circuit and others have written at some length about the "firmly entrenched rule" against the use of a grand jury subpoena to secure additional evidence against a defendant, under the guise of another purpose; but such cases generally turn on whether the subpoena is used post-indictment or pre-indictment.   *See e.g.*, *In re Grand Jury Proceedings (Johanson)*, 632 F.2d 1033, 1041 (3d Cir. 1982); *U.S. v. Mays*, 765 F.2d 329, 332 (4th Cir. 1985).   Here the purpose and intended use are not clear; but in any event, while the subject is raised as a possible issue with respect to this subpoena, the undersigned trusts that Mr. Weinstein will fully develop it if he chooses to intervene and he and his counsel deem it appropriate.

2 Since the undersigned was permitted to withdraw from appearing as defense counsel in this case, the instant subpoena does not raise some of the traditional concerns about interference with an ongoing attorney-client relationship and the implications for that relationship going forward in the criminal case.   However, there remain

The undersigned respectfully reserves the right to raise additional arguments when more is made known about the subpoena and its purpose. The undersigned further respectfully submits that Mr. Weinstein must be permitted to intervene, if he chooses to do so, and raise any or all of these arguments and other arguments which he deems appropriate.

## The Subpoena is Untimely, Unreasonable, Oppressive, and Overbroad

The subpoena at issue here does not just seek basic information regarding the amount and date and source of all payments during the specified time frame [See Exh. A to DE 94 at Para. 1]. Nor does it "just" seek the undersigned's testimony and production of all records concerning the due diligence performed in relation to the source(s) of all such attorney's fee payments – including in person, telephone, and written communications on the subject. [Exh. A to DE 94 at Para. 2]. It seeks, as well, testimony concerning and the production of all records related to how the undersigned spent every penny of the attorney's fee paid during this time period, including all bank statements, copies of all checks from the undersigned's account, etc. [Exh. A to DE 94 at Paragraph 3].3

The government demands such testimony and production despite the fact that it only just charged the allegedly fraudulent conduct from which it claims the fees are proceeds, in May of this year, over a year after the payment to the undersigned in the above-captioned case. The government first identified the relevant underlying conduct in the new criminal complaint it filed against Mr. Weinstein and others on May 13, 2013. [See *U.S. v. Weinstein, et al.*, Crim No. 13-mj-8148 (MCA).

---

serious concerns because the matters that are the subject of the subpoena arose during the attorney-client relationship and involve attorney-client communications intended to be confidential and privileged and that privilege is a continuing one. There are serious concerns relate to that relationship and privileges and rights flowing therefrom.
3 The government reportedly sent similar subpoenas to other attorneys and others who provided professional services to Mr. Weinstein in connection with the above-captioned case.

There has been no finding of guilt with respect to the underlying charged conduct and certainly no finding of forfeitability and no forfeiture order in relation to such underlying recently charged conduct.

There certainly was no order of forfeiture nor any restraining order sought or in place at the time of transfer; nor, of course, was the underlying conduct from which the government claims these fees to be proceeds ever previously charged or in any way specified or otherwise made known to the undersigned from any source.   Yet, the government has issued its subpoena going so far as to compel even how the monies paid to the undersigned alleging arising from this recently charged conduct has been spent by the undersigned.

The government has made no showing and certainly obtained no order of forfeitability as to these fees, it cannot make any showing that the undersigned had any notice about the conduct from which it claims the fees to be proceeds.   And certainly the alleged conduct never before was identified/specified by the government, giving rise to some kind of notice of possible forfeitability.

Further, the government must explain, even if it had a judgment of guilt on the underlying charged conduct and an order of forfeiture, under what legal theory it would be entitled to substitute assets from a third party, or the tracing of assets not yet even found to be forfeitable.

It is indisputable that the undersigned earned all fees paid to him long ago and spent all fees paid to him long ago (and has a very large outstanding bill for earned fees and out of pocket expenses paid in this case); moreover, the government also well knows or should well know that the source for the fee it has identified in its Complaint against Mr. Weinstein *et al*. in the new charges was thoroughly vetted by the undersigned and a neutral third party (a respected officer of this Court, approved in advance by the government), as well as by other respected officers of this

–5–

Court pursuant to the due diligence process.

The timing of the subpoena also highlights the inherent conflict of interests that arises especially from the second paragraph of the subpoena – the due diligence efforts. Obviously, it is in the undersigned's own interests to disclose in full all of the lengths the undersigned went to in assuring the legitimacy of the source of funds for fees and expenses in this case.

Such disclosure, however, might not be in the best interests of the client, if, hypothetically, the disclosures revealed any source of funds rejected by the undersigned, or referred to a previously undisclosed source of funds, of if assurances given by the client and others who the government has alleged to be a co-conspirator of his (with such statements therefore potentially attributable to the client as well, if a conspiracy were found and they were determined to be in furtherance of the conspiracy) were now to be used to bring additional charges or to support charges in the new case against the client.

At the very least, the government's subpoena is way premature.4 In reality, it is completely unreasonable, oppressive, overbroad, misplaced and inappropriate – especially at this juncture - and finds no support for what it seeks in fact or in the law.5

---

4 It is premature for all of the reasons set forth herein to the extent the government intends to seek forfeiture of the attorneys' fees paid in this case; to the extent it is intended to provide some notice about the underlying allegedly illegal conduct and assert that monies paid to the undersigned were proceeds from the same, it is far too late. The key inquiry/knowledge/reason to believe point is the time of the transfer, under the government's own Guidelines, the forfeiture statutes, and the relevant body of case law. Here the undisputed evidence will be that the undersigned knew nothing at all about the underlying alleged conduct and had no reason whatsoever to believe at the time of the payment of the attorney's fees that any such fee was in any way related to such conduct. To go further with respect to a representation on this point would be to step into exactly the danger this subpoena raises – revealing confidential/privileged communications in the due diligence process. While such a course of action certainly would serve the undersigned's interests, the undersigned will not disclose anything further on this subject.

5 Interestingly, during the course of the instant case, back on January 13, 2012, Mr. Klingeman wrote to the Court asking to address the issue of fee forfeiture, in light of the government's insistence on vetting and the threat of seeking forfeiture. Mr. Klingeman urged the government to tell the defense team then any specific bases it had for claims of forfeitability. The government categorically rejected the propriety of addressing the issue at that juncture before there was judgment in the case or a forfeiture order in place. Now, before there even is an indictment in the new case

The most immediate concerns in the context of this case, and the primary force driving this motion, as indicated in the undersigned's Declaration, is the potential impact on Mr. Weinstein's secrets and confidences which the undersigned is duty bound to maintain as such (to be discussed below), along with all other concerns identified in the Declaration.6

The fact of the matter, though, is that, even apart from those overriding interests, there is no lawful basis for compelling the undersigned to comply with the dictates of this subpoena for there is no lawful basis at all for the forfeiture of the fees at issue, no lawful basis for seeking substitute assets and certainly no basis, therefore, for the comprehensive tracing of any monies the undersigned received in connection with the representation of Mr. Weinstein in this case.7

As indicated in the Schoen Declaration, any and all fees and out of pocket reimbursement paid to the undersigned in connection with the representation of Mr. Weinstein were earned and spent long ago and the undersigned has a large outstanding unpaid bill for additional attorney's

---

against Mr. Weinstein, the government seeks to jump over that step and move right to the tracing of assets without any finding of guilt, forfeitability, any forfeiture order, any chance to adjudicate our BFP status – all over a year after the fees paid were earned.

6 Many of the arguments in favor of quashing the subpoena are arguments related to potential prejudice to Mr. Weinstein and his privileges and constitutional rights and are perhaps best advanced by Mr. Weinstein whose privilege and rights are at issue and which he can most effectively invoke. The undersigned has been advised by counsel to Mr. Weinstein that he does not waive any privilege and so the undersigned's duty is to safeguard the same to the fullest extent permitted by law, consistent with the undersigned's ethical obligations. Notice of this motion has been provided to counsel for Mr. Weinstein and he undoubtedly will determine whether he wishes to exercise his right to intervene. *See e.g. In re Grand Jury Proceedings (FMC Corp.)*, 604 F.2d 798 (3d Cir. 1979); *Perlman v. U.S.*, 247 U.S. 7 (1917). In the context of this case, it would seem that the argument that the subpoena is premature or that its timing should be considered in connection with this motion, would be significant to Mr. Weinstein. The defendants are charged with conducting a "scheme" based on a number of false statements. A response to the government's subpoena would require testimony on and the production of documents generated in the course of the "due diligence" process. If the government's agenda with respect to the subpoena is to seek the forfeiture of the fees paid, as opposed to using the process to gather more evidence against the defendants, including additional evidence of what it might characterize as false representations about the source of the monies at issue, then there is no reason for the action sought through the subpoena to be required now. As noted, all monies paid were earned and have been spent; so there is no risk of the dissipation of any purportedly forfeitable funds.

7 The government was advised almost immediately after receipt of the subpoena and cover letter that any and all monies paid on behalf of Mr. Weinstein were earned and spent long ago. Indeed, there is a large outstanding bill for additional monies earned and out of pocket expenses advanced for Mr. Weinstein

–7–

fees and expenses incurred in connection with the instant case and related civil cases in which the undersigned represented Mr. Weinstein.

There are, therefore, no funds to freeze or forfeit even if the government had some lawful basis for the same and it is well settled that the "substitute asset provisions of the federal criminal forfeiture states apply only to the property of a criminal defendant" and not to the lawyer. Smith, *Prosecution and Defense of Forfeiture Cases*, Sec. 13.04[1][b]; *In re Moffitt, Zwerling & Kemler, P.C.*, 864 F. Supp. 527 (E.D. Va. 1994), *aff'd in relevant part*, 83 F.3d 660 (4th Cir. 1996).

There is no basis on the facts present here, and certainly not at this juncture, to permit the kind of onerous and oppressive tracing effort the government seeks to pursue through paragraph 3 of the subpoena and certainly not at this juncture.[8]

There has been no showing that any of the funds paid to the undersigned were criminal activity proceeds, there can be no showing that the undersigned in any way had any reasonable cause to believe that any monies paid to the undersigned were criminal activity proceeds or otherwise subject to forfeiture, especially after the continual, active due diligence process, applied in this case to any and all monies received at any time. The undersigned clearly had the status of a bona fide purchaser for value ("BFP") at all times with respect to any and all monies received in connection with the undersigned's representation of Mr. Weinstein in this case.[9]

It may be that the government is not willing to take the undersigned's word on the BFP

---

[8] The undersigned is a solo practitioner and other than the required escrow/trust account, the undersigned does not maintain any account or accounting that separates fee income and the expenditure of fee income from other income and expenses. Accordingly, compliance with Paragraph 3 of the subpoena would mean obtaining, analyzing, and producing to the grand jury, every check, bank statement, credit card statement and all other records related to every personal and family expenditure the undersigned or any family member has made since January 2012. There is absolutely no reasonable basis for such a subpoena.

[9] The term "bona fide purchaser" includes a bona fide provider of services under the forfeiture statutes. *See e.g. U.S. v. Harvey*, 814 F.2d 905, 914-17 (4th Cir. 1987).

–8–

status and that would be unfortunate; but there certainly is no basis at this juncture to require compliance with Paragraph 3 of the subpoena. It is far premature, there is no legal basis for it, and it is unreasonable, and oppressive. Similarly, there is no reason to require compliance with Paragraph 2 at this time either. It, too, is far premature, overbroad and, most importantly, compliance with its terms absolutely would require the production of confidential attorney-client and work-product privileged communications.

Under any analysis, even if there were a finding of guilt on this recently charged conduct, the undersigned clearly qualifies as a bona fide purchaser as a matter of both fact and law and the assets at issue were both earned and spent long ago.

## THE ISSUANCE OF THIS SUBPOENA VIOLATES THE DEPARTMENT OF JUSTICE'S OWN GUIDELINES FOR SUBPOENAS ADDRESSED TO ATTORNEYS' FEES

The subpoena at issue, in several ways, clearly appears to run afoul of the U. S. Attorneys' Manual on Attorney Fee Forfeiture Guidelines, set out at Sec. 9-120.000, *et seq*. of that manual. This is especially troubling in light of the DOJ's express recognition of the many consequences of taking such action as it is attempting to take here and its assurance that its policy requires the careful review and uniform and fair application of its Guidelines. *See* Section 9-120.000. A copy of the Guidelines is attached hereto as Exhibit "1."

For example, the Manual directs at Section 9-120.104 that while the forfeiture of an asset transferred to an attorney for payment for legal fees for representation in a criminal matter may be pursued, the pursuit of such assets by the government shall occur only "where there are reasonable grounds to believe that the attorney had **actual knowledge** that the asset was subject to forfeiture

–9–

at the time of the transfer...."   [Emphasis added]10

In the present circumstance, it would be impossible for the government to have "reasonable grounds to believe" that the undersigned had actual knowledge that any monies paid to me for my attorney's fee were subject to forfeiture at the time of the transfer.   The subpoena purportedly is based on allegations in the new criminal complaint against Mr. Weinstein *et* al. regarding an alleged "scheme" that was not at all a part of the specified conduct when the undersigned served as defense counsel or when the undersigned received attorney's fees for work on Mr. Weinstein's defense.   The undersigned was in no way even aware of the transactions, legal or illegal, and certainly had no reason to believe, let alone actually know, that the fees were from such transactions (if they were) or that any such transactions even occurred, let alone that they might have been illegal.

Notably, a condition of the undersigned's employment in this case (a condition the undersigned has put in place in other cases as well in which financial fraud is alleged) was that no fees or expense reimbursements paid to the undersigned could come from Mr. Weinstein's assets, nor could they be in any way connected to Mr. Weinstein's assets or assets in which he had any interest or arising from any business deal in which he had any ownership interest.

This was a guiding principle in the due diligence process to which the undersigned scrupulously adhered at all times, along with other measures to assure the legitimate source of all fees to the fullest extent possible in the exercise of the stringent due diligence process in this case.

The government cannot take refuge in a generalized argument that the attorneys in

---

10 The DOJ expressly and intentionally set a higher standard of knowledge requirement  - "actual knowledge" - for an attorney subpoena to be issued than the forfeiture statutes require for third party BFP status.  Under the forfeiture statutes, the party claiming BFP status needs to show that he was reasonably without cause to know that the property at issue was subject to forfeiture.  *See e.g.*, 18 U.S.C. Sec. 1963©; 21 U.S.C. Sec. 853©.

Mr. Weinstein's original criminal case knew that the government might claim some of Mr. Weinstein's assets to be subject to forfeiture if the case resulted in a conviction. The DOJ's Attorney Fee Forfeiture Guidelines expressly address such a claim. Such Guidelines at Section 9-120.107 of the Manual provide that such generalized knowledge simply is not enough to issue a subpoena to an attorney. Rather such subpoena must be based on "**actual knowledge** that the particular asset he/she received was subject to forfeiture." [Emphasis added]

This same Guideline further explains that the standard of reasonable grounds to believe that an attorney has **actual knowledge** that an asset is subject to forfeiture, sufficient to issue a subpoena to the attorney regarding his attorney's fee is satisfied "when there is evidence that it was known to the attorney **at the time of the transfer** either: (a) that the government had asserted that the particular asset is subject to forfeiture or (b) that the particular asset in fact is from criminal misconduct. Neither of these provisions can be satisfied in the instant case.

Until May 13, 2013, over a year after payment of an attorney's fee from the source the government has identified in the new Complaint, the government never alleged nor even referred to the conduct it now claims to have occurred in early 2012 (at least not in anything the undersigned ever has seen or heard). Certainly the government never asserted that monies paid to any lawyer flowed from any such then uncharged criminal misconduct.

Indeed, one assumes that the government's position in the underlying criminal cases will be that it did not even know about the alleged conduct which it claims to have occurred in early 2012 at the time it occurred or even until approximately a year later.

The undersigned neither knew about the recently charged conduct nor about any claim that the proceeds from any such conduct would be an asset subject to forfeiture at the time of transfer

−11−

and the government never has had any reasonable grounds for believing otherwise. Clearly the issuance of the instant subpoena runs afoul of the government's own guidelines.

In sum, at the time of the transfer of any funds to the undersigned for an attorney's fee, neither Mr. Weinstein nor anyone else was even charged with the crime which the government now claims gives rise to the forfeiture of such monies. Certainly such monies were never identified as forfeitable assets at the time of the transfer. See Section 9-120.108 of the Attorney Fee Guidelines.

The DOJ Guidelines also expressly prohibit the government from using a subpoena in this context "… to obtain any confidential communication." Section 9-120.113. The subpoena at issue here clearly is far too broad in that regard; for, among other things, the communications in connection with the "due diligence" process, (Exh. A to DE 94 at Para. 2), which the subpoena seeks to compel testimony and production concerning, absolutely would encompass confidential attorney-client communications. [See Schoen Declaration and the following section of this Memorandum]

The DOJ Guidelines at Section 9-120.114 require that any grand jury subpoena to an attorney for information relating to the representation of a client "must be authorized by the Assistant Attorney General, Criminal Division."

While of course, it is possible that such authorization was obtained before the subpoena at issue was sent to the undersigned, there is no indication of the same on anything thus far provided to the undersigned. If such authorization were sought and obtained, the undersigned respectfully would request the production of any documents or evidence of communications to the Assistant Attorney General, Criminal Division which reflects any prosecutor's claim of reasonable grounds

–12–

to believe that the undersigned at any time had actual knowledge that the asset(s) was subject to
forfeiture at the time of transfer.

## THE SUBPOENA IMPERMISSIBLY SEEKS TO COMPEL THE PRODUCTION OF CONFIDENTIAL/PRIVILEGED CLIENT COMMUNICATIONS

### Attorney-Client Privilege

"Historically, a lawyer is an officer of the Court and is bound to work for the
advancement of justice while faithfully protecting the rightful interests of his
clients.  In performing his various duties, however, it is essential that a lawyer
work with a certain degree of privacy free from unnecessary intrusion by opposing
parties and their counsel... .  That is the historical and the necessary way in which
lawyers act within the framework of our system of justice."

*U. S. v. Nobles*, 422 U.S. 225, 237 (1975).

As the United States Supreme Court has recognized, "[t]he attorney/client privilege is the
oldest of the privileges for confidential communications known to the common law." *Upjohn
Company v. U.S.*, 449 U.S. 383, 389 (1981).

The fundamental purpose of the privilege is to "full and frank communications between
attorneys and their clients;" it "rests on the need for the advocate and counsel to know all that
relates to a client's right in seeking representation if the professional mission is to be carried out
and is essential to enable the client to be free 'to make full disclosure to their attorneys'" *Id.*  In
this way, the privilege "promotes [the] public interest in the observance of law and administration
of justice" *Id.*  In sum, the privilege reflects both that "sound legal advice for advocacy serves
public ends," and "such advice for advocacy depends on the lawyers being fully informed by the
client ... [which will occur only when the client is]" "free from the consequences or apprehension
of disclosure." *Id.*    *See also, Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 128 (1996).  (The
attorney/client privilege is "rooted in the operative need for confidence and trust," and "the mere

−13−

possibility of disclosure ... [for that] may cause embarrassment and disgrace ... may impede development of the confidential relationship").

Courts guard the right to confide in counsel jealously, because it is "so sacred and so compellingly important." *Schur - Time Equipment, Inc. v. Big Dutchman, Inc.,* 255 F. Supp. 1020, 1021 (W.D. Mich. 1966).

In addition to invading the attorney-client privilege in this case, the subpoena here creates an actual conflict between lawyer and client with respect to the privileged communications. The conflict is between the undersigned's interest in keeping the fees paid in this case and in showing all due diligence in the fee process on the one hand and the client's interests in maintaining the confidentiality of all related discussions on the other. The lawyer's due diligence might well have included rejecting certain proposed sources or transactions from which any given source might draw the fee, and the full vetting of accepted sources, while the client would have a compelling interest in maintaining confidentiality with respect to the rejected source, and perhaps, the underlying rejected funds and associated discussions.

Let us say, for example, the client came to the attorney to propose paying the attorney's fee from "x" source and the attorney rejected it.

In such a circumstance the client must be permitted to freely seek the attorney's legal advice with respect to the source of the fees and he must be able to present the matter to the attorney in the belief that his discussions and the underlying facts would remain secret and confidential pursuant to the attorney-client privilege and would not be marked by the risk of disclosure by subpoena such as that which has been served here.

Moreover, while the discussion concerning a rejected source would be compelled under

–14–

Paragraph 2 of the subpoena at issue here, the rejected source for the fee would not be relevant to any forfeiture effort by the government; so there would be no legitimate reason for requiring production of documents or testimony concerning such discussions.

On the other hand, it would be in the attorney's interest to produce all evidence of such discussions to show that in the furtherance of the attorney's due diligence certain sources were rejected.

The reasons for rejecting a source would further support a showing of due diligence; yet their disclosure would undermine the client's interest in speaking confidentially with the attorney, the client's underlying interest in not having the lawyer possibly implicate him in a crime based on the discussion between attorney and client, and in not having the attorney reveal the identity of the rejected source or the funds at issue. This very realistic example, demonstrates the over-breadth of the subpoena, among its other infirmities.

Fee related arrangements and communications, while often not privileged, in any given case, might well include confidential communications, *In Re: Osterhoudt*, 722 F.2d 591, 593 (9th Cir. 1983), and that certainly is the case here – especially in furtherance of the due diligence process.

Moreover, the law recognizes that certain discussions or information which normally might not be privileged, become privileged when they provide a further inculpatory link in an existing chain of information. *In Re: Grand Jury Proceedings*, 942 F.2d 746, 748 (11th Cir. 1991); *In Re: Grand Jury Subpoena,* 926 F.2d 1423 (5th Cir. 1991); *In Re: Grand Jury Proceedings (Cherney)*, 898 F.2d 565 (7th Cir. 1990); *Ralls v. U.S.*, 52 F.3d 227 n.1 (9th Cir. 1995). This is known as the "last-link" doctrine and it applies in full force here. Where, as here,

–15–

the government already has a great deal of information about the parties involved and their assets,

a single reference in a single due diligence related communication, which the client and attorney

fully intended to be privileged, maintaining all client secrets and confidences, could provide the

last link the government believes it needs to obtain inculpatory evidence against the defendant –

purely as a function of the invasion of the attorney-client privilege through this subpoena. Again,

this is an issue for Mr. Weinstein to consider raising if he were to choose to intervene.

## Work Product Privilege

"It is essential that a lawyer work with a certain degree of privacy, free from unnecessary

intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510-511

(1947). The "work-product doctrine is an intensely practical one, grounded in the realities of

litigation in our adversary system" *U.S. v. Nobles*, 422 U.S. 225, 238 (1975).

In the instant circumstance, the subpoena, by its terms, would require the production of the

undersigned's mental impressions in notes and emails concerning the legality of the underlying

proposed source for fees and in this case the unfettered exploration and conclusions concerning

any such proposed source was necessary for the exercise of the undersigned's professional

judgment in giving legal advice to the client.

An additional danger from the issuance of a subpoena like that at issue here is that it has the

effect in this case and beyond, of interfering with the right of a defendant to have his attorney's

fees paid by a legitimate third party source. Often, given the specter of a criminal case, a

defendant without funds of his own to retain counsel, depends on the good will of family, friends,

or a community to help fund the defense. In the face of a pattern of conduct designed to interfere

with the exercise of the right to obtain assistance from third parties in order to secure the right to

–16–

counsel of choice, courts have been increasingly protective of the right and increasingly averse to efforts to interfere with this fundamental constitutional right. *See e.g.*, *U.S. v. Stein*, 541 F.3d 130, 156 (2d Cir. 2008).

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully submitted that the grand jury subpoena at issue should be quashed. It should never have been issued under the DOJ's own Guidelines, there is no basis for requiring the undersigned to produce fee source information, proof of due diligence, and an accounting and the production of documents regarding the disposition of fees paid to the undersigned.

The undersigned clearly is a BFP as to all fees received in this case, no notice of the alleged conduct at issue here was given at the time of transfer and the undersigned had neither actual knowledge not any reasonable cause to know any fees received were the product of the allegedly criminal conduct at issue – nor did the undersigned even know about the relevant charged transactions, legal or illegal.

There has been no finding of guilt with respect to such conduct, no finding of forfeitability, and no order of forfeiture. The production of testimony and documents related to the undersigned's due diligence with respect to fees proposed or paid in this case would reveal privileged communications.

The undersigned respectfully asks this Court to quash the subpoena at issue.

Dated: August 23, 2013           Respectfully submitted,

Atlanta, Georgia

                            /s/ David I. Schoen, *Pro se*

–17–

## CERTIFICATE OF SERVICE

I hereby certify that I have caused the foregoing document to be served on all counsel of record via

the Court's ECF system on this 23rd day of August, 2013.

/s/ David I. Schoen, *Pro se*

David I. Schoen, Attorney at Law
2800 Zelda Road, Suite 100-6
Montgomery, Alabama 36106
TEL 334-395-6611
FAX 917-591-7586
DSchoen593@aol.com