

**U.S. DEPARTMENT OF JUSTICE**
*United States Attorney*
*District Of New Jersey*

Gurbir S. Grewal
Assistant United States Attorney
Economic Crimes Unit

970 Broad Street, Suite 700
Newark, NJ 07102

office: 973-645-2874
fax: 973-297-2045

September 9, 2013

**By ECF and Email**
The Honorable Joel A. Pisano
United States District Judge
Clarkson S. Fisher Federal Building
      & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

   Re:  <u>United States v. Weinstein, Cr. No. 11-701 (JAP)</u>

Dear Judge Pisano:

  Please accept this letter brief in lieu of a more formal submission in opposition to defendant ELIYAHU WEINSTEIN's motion for specific performance of his plea agreement (Dkt. No. 98) and the arguments made in his supporting memorandum of law ("Mem. of Law") (Dkt. No. 99). As his relief, defendant WEINSTEIN seeks dismissal of the complaint pending against him before Magistrate Judge Madeline Cox Arleo. <u>See</u> <u>United States v. Weinstein, et al.</u>, Mag. No. 13-8148 (MCA) ("<u>Weinstein II</u>"). For the reasons set forth below, defendant WEINSTEIN's motion should be dismissed as both premature and without merit.

**RELEVANT BACKGROUND**

  On January 3, 2013, pursuant to a written plea agreement with the government, defendant WEINSTEIN pleaded guilty to Count One of the Indictment (charging him with conspiracy to commit wire fraud) and Count Thirty-Six of the Indictment (charging him with transacting in criminal proceeds). The parties' plea agreement contained the following provision, among others:

    If Eliyahu Weinstein enters a guilty plea <u>and is sentenced on these charges</u> consistent with the stipulated range under Rule 11(c)(1)(C) of the

>Federal Rules of Criminal Procedure, and otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further criminal charges against Eliyahu Weinstein for his conduct, <u>now known to the Government</u>, from in or about June 2004 <u>through the date a plea</u> is entered in this matter.

(Dkt. No. 74 at 1 (emphases added).)

On or about May 13, 2013, Magistrate Judge Cox Arleo signed a criminal complaint against defendant WEINSTEIN and issued a warrant for his arrest, having found that that there was probable cause to believe that he conspired to commit wire fraud and money laundering between February 2012 and May 2013, and that he committed five substantive counts of wire fraud at various times throughout 2012 while on release in this case. (See Mag. No. 13-8148, Dkt. Nos. 1 and 3.)  On or about May 14, 2013, defendant WEINSTEIN was arrested on those charges.

Defendant WEINSTIEN now argues that the government breached its plea agreement with him by arresting him on the charges in the <u>Weinstein II</u> complaint.  He contends that the criminal conduct outlined in the complaint was covered by his plea agreement because it is either encompassed by the conspiracy charged in Count One of the Indictment, or because he reasonably believed that it was included in the conduct from in or about June 2004 through January 3, 2013 for which the government agreed not to initiate further charges against him. He does so through a tortured reading of Count One, and by reading away the language in the provision cited above that expressly states that in exchange for his guilty plea the government will initiate no further charges for conduct then "known" to the government that occurred from June 2004 through the date of his plea.  Based on these contrived readings of the Indictment and the plea agreement, defendant WEINSTEIN argues that the court should compel specific performance under the plea agreement and dismiss the complaint in <u>Weinstein II</u>.

As demonstrated below, defendant WEINSTEIN's arguments fail for a number of reasons.

2

**ARGUMENT**

**A.  Defendant WEINSTEIN's Motion Should Be Denied As Premature**

As a threshold matter, the court need not reach the merits of defendant WEINSTEIN's motion at this point for two reasons. First, defendant WEINSTEIN has no legally cognizable claim at this time. The provision of the plea agreement that he cites – the government's agreement to not prosecute him for criminal conduct occurring between June 2004 and the date of his plea that is "known" to the government – is triggered only upon defendant WEINSTEIN entering his guilty plea <u>and</u> being sentenced on the charges to which he has pleaded guilty. (<u>See</u> Dkt. No. 74 at 1 ("If Eliyahu Weinstein enters a guilty plea <u>and</u> is sentenced on these charges…" (emphasis added.).) Because the latter event has not yet occurred, there has been no breach of the plea agreement.

Second, defendant WEINSTEIN's motion is premature because a formal indictment laying out all of the post-plea charges against him and detailing the full extent of his post-plea criminal conduct has not yet been brought. It is, therefore, not possible (nor practical) for the Court to conduct the type of analysis necessary to assess whether or not there has been a breach of the plea agreement at this time without a full understanding of what the formal charges against defendant WEINSTEIN will be in the new case.

**B.  Defendant WEINSTEIN's Motion Fails Because The Conduct At Issue Post-Dates The January 3, 2013 Plea Agreement**

If the Court is inclined to consider defendant WEINSTEIN's motion at this time, it fails because the plea agreement only provided defendant WEINSTEIN with coverage for "known" conduct through the date of his plea. Here, Magistrate Judge Arleo found probable cause to believe that defendant WEINSTEIN engaged in two conspiracies in the <u>Weinstein II</u> complaint (a wire fraud conspiracy and a money laundering conspiracy) that extended into May 2013, well past the date of his plea. Therefore, under any reading of the plea agreement, the conduct charged in <u>Weinstein II</u> is not covered by it even if aspects of it were known at the time of the plea (which they were not).

3

### C. Defendant WEINSTEIN's Motion Fails Because The Conduct At Issue Is Not Part Of The Conspiracy Charged In Count One Of The Indictment And Was Not "Known" To The Government

If the court is inclined to consider the merits of defendant WEINSTEIN's motion at this time, then the Court must determine whether, under contract law principles, the government breached the plea agreement. United States v. Gebbie, 294 F.3d 540, 545 (3d Cir. 2002); United States v. Moscahlaidis, 868 F.2d 1357, 1361 (3d Cir. 1989) ("Although a plea agreement occurs in the criminal context, it remains contractual in nature and is to be analyzed under contract-law standards."). Such agreements, however, are unique in light of special due process concerns and must be construed accordingly. United States v. Baird, 218 F.3d 221, 229 (3d Cir. 2000). Thus, "[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971).

"In determining whether the terms of a plea agreement have been violated, [the] court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Badaracco, 954 F.2d 928, 939 (3d Cir. 1992) (quoting United Staets v. Nelson, 937 F.2d 1519, 1521-22 (11th Cir. 1988)). "However, cases of disappointed and unfounded expectations must be carefully distinguished from those in which the defendant's expectations as to his sentence are predicated upon promises by the Government or statements from the court. Id. (quoting United States v. Crusco, 536 F.2d 21, 24 (3d Cir. 1976)).

Here, under a plain reading of the plea agreement, defendant WEINSTEIN could not have reasonably understood that the criminal conduct outlined in Weinstein II, which continued post-plea and which was not known to the government until after his plea, was encompassed by Count One of the Indictment or otherwise covered by the plea agreement.

#### 1. The Criminal Conduct Is Completely Different From The Conduct Charged in the Indictment

Defendant WEINSTEIN contends that he reasonably believed that the conduct charged in the Weinstein II complaint was encompassed in the conspiracy charged in Count One of the Indictment to which he pleaded guilty on January 3, 2013 and

that, therefore, both the plea agreement and the Double Jeopardy clause of the Constitution precludes the new charges. (See Mem. of Law at 8-10.) In support of his position, defendant WEINSTEIN claims that Weinstein II complaint conduct and the Indictment conduct have, among other things, similar "overt acts," "a common goal," and "all of the co-conspirators in the [Weinstein II] Complaint were identified by the government in one way or another as co-conspirators in the Indictment." (Id. at 7, 9.) There is simply no support for any of these contentions.

    The conspiracy charged in Weinstein II - the new conspiracy - is markedly different from the one charged in Count One of the Indictment - the old conspiracy. First, the new conspiracy began in February 2012 - nearly six months after the old conspiracy ended. None of the overt acts in furtherance of each conspiracy are, therefore, the same. Second, the new conspiracy is centered on fraud related to the initial public offering of Facebook; the old conspiracy involved sham real estate investments. Third, the co-conspirators in the new conspiracy are different than those involved in the old conspiracy. In fact, several of the co-conspirators involved in the new criminal conduct were victims of the old conspiracy; defendant WEINSTEIN preyed on their need to be made whole for their prior losses to enlist them in his new criminal scheme. Fourth, the new conspiracy involves entirely new victims. Fifth, the investigation has revealed that defendant WEINSTEIN used the fact of the old conspiracy to further the new fraud. In some cases, he told new victims that he was under Indictment and being supervised closely by the Court, and it was, therefore, impossible for him to do anything criminal in his dealings with the new victims. In other instances, he created fictitious identities to conceal his involvement in new crimes in which he engaged following his Indictment because some victims were hesitant in dealing with him in light of the prior Indictment. Finally, the argument that the conspiracies are the same simply because the goal of each was to enrich defendant WEINSTEIN and his co-conspirators is not enough to establish they are one in the same; the goals of all investment fraud schemes are presumably to generate money for the participants.

    As for the Double Jeopardy claim, the fact that the old conspiracy ended in August 2011 while the new conspiracy began six months later - in February 2012 - demonstrates that there is no Double Jeopardy violation here. "Further operation of [an] 'old' conspiracy after being charged with that crime becomes a new offense for purposes of [a] double jeopardy

5

claim." United States v. Sturman, 679 F.2d 840, 844 n.9 (11th Cir. 1982) (quoting United States v. Stricklin, 591 F.2d 1112, 1121 n.2 (5th Cir. 1979); see United States v. Asher, 96 F.3d 270, 273-74 (7th Cir. 1996). After all, "[o]ne who insists that the music stop and the piper be paid at a particular point must at least have stopped dancing himself before he may seek such an accounting." Garrett v. United States, 471 U.S. 773, 790 (1985); see United States v. Pungitore, 910 F.2d 1084, 1111 (3d Cir. 1990).

   2. **The Plea Agreement Is Unambiguous And Covers Only Conduct Between June 2004 And January 3, 2013 That Was "Known" To The Government**

"When ascertaining the intent of the parties, the language of the agreement, if unambiguous, should ordinarily be conclusive." Margalli-Olvera v. I.N.S., 43 F.3d 345, 351 (8th Cir. 1994); see also Gebbie, 294 F.3d at 545 ("We first examine the text of the contract, or, in this case, the language of the [] plea agreement."). Here, the government agreed that it would not "initiate any further criminal charges against Eliyahu Weinstein for his conduct, now known to the Government, from in or about June 2004 through the date a plea is entered in this matter." (Dkt. No. 74 at 1(emphasis added).) The highlighted language is unambiguous, and the conduct that formed the basis for the Weinstein II complaint was not known to the government until months after the plea. Hence, it cannot be a breach of the plea agreement to bring the new charges.

Defendant WEINSTEIN, however, contends that the plea agreement required the government to forswear all future prosecutions of defendant WEINSTEIN for conduct occurring between June 2004 and the date of his plea agreement. (See Mem. of Law at 10-11.) Essentially, defendant WEINSTEIN contends that the plea agreement gave him license to commit all the crimes he wished to commit between the date of his arrest and the date of his plea. As support, defendant WEINSTEIN points to the financial accounting language of the plea agreement and argues that he agreed to "testify to 'conduct' both during and after the period of the Indictment that the government could find fraudulent," and "would not [have] agree[d] to give "such a deposition if he believed that he had further criminal prosecution." (Mem. of Law at 11.)

Defendant WEINSTEIN's position is contradicted by the unambiguous language of the plea agreement, which makes clear that government is only precluded from bringing new charges

relating to conduct occurring between June 2004 and the date of the plea that was then "known" to the government. Moreover, the financial accounting provision of the plea agreement does not support defendant WEINSTEIN's position; that provision is tied to the conduct outlined in the Indictment and provides that defendant WEINSTEIN provide

> full accounting, under penalty of perjury, of all monies paid to, or assets received by, Eliyahu Weinstein, directly or indirectly, <u>from any and all entities and individuals referred to in the Indictment</u>, during and after the period charged in the Indictment and the disposition of any and all funds.

(Dkt. No. 74 at 5 (emphasis added).)

Finally, defendant WEINSTEIN's reliance upon <u>United States v. Pressley</u>, 865 F. Supp. 2d 606 (D.N.J. 2012), in support of his position that he reasonably believed that the government agreed to forswear all future prosecutions of him for all conduct from June 2004 through the date of his plea is misplaced. While the court in <u>Pressley</u> found that the defendant's plea agreement with the government precluded a subsequent prosecution, the precluded charges in that case did not concern a new scheme that began after the defendant's original indictment and continued past his guilty plea (as is the case here), but instead were new charges that relied at least, in part, upon temporally the same criminal conduct to which the defendant had already pleaded guilty. Here, none of the charges in the <u>Weinstein II</u> complaint are based on any transaction or event in the Indictment, and took place well after conspiracy period charged in the Indictment.

7

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny defendant ELIYAHU WEINSTEIN's motion for specific performance.

                                    Respectfully submitted,

                                    PAUL J. FISHMAN
                                    United States Attorney

                                  By: GURBIR S. GREWAL
                                  RACHAEL A. HONIG
                                  ZACH INTRATER
                                  Assistant U.S. Attorneys

cc: Eric M. Creizman, Esq. (by ECF and email)
     Caroline J. Polisi, Esq. (by ECF and email)