```
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                :
UNITED STATES OF AMERICA                        :
                                                :   Docket No. 11-CR-701 (JAP)
     -v-                                        :
                                                :
                                                :
ELIYAHU WEINSTEIN, and                          :
VLADAMIR SIFOROV                                :
                                                :
                                                :
              Defendants.                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
```

# MEMORANDUM OF LAW IN SUPPORT OF ELIYAHU WEINSTEIN'S MOTION TO WITHDRAW HIS GUILTY PLEA BASED ON A VIOLATION OF RULE 11(c)(1) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

November 13, 2013

CREIZMAN PLLC
Eric M. Creizman
565 Fifth Avenue, Fl. 7
New York, New York 10017
Tel.: (212) 972-0200
Fax: (646) 200-5011
Email: ecreiz@creizmanllc.com

Attorneys for Eliyahu Weinstein

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF FACTS ................................................................................................. 1

ARGUMENT ..................................................................................................................... 4

    I.     District Judges Are Prohibited From Participating In Plea Discussions Under The Federal Rules of Criminal Procedure .................................................................. 4

    II.    The Court's Participation In Weinstein's Plea Discussions Violated Rule 11 And Impacted Weinstein's Decision To Waive His Right To Trial .......................................... 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

United States v Baker,
489 F.3d 366 (D.C. Cir. 2007)……………………………………………………………………5, 6

United States v. Bradley,
455 F.3d 453 (4th Cir. 2006)……………………………………………………………..……….6

United States v. Bruce,
976 F.2d 552 (9th Cir. 1989)…………………………………………………………...4, 5, 7, 9

United States v. Varela,
497 F. 3d 1122 (10th Cir. 2007)………………………………………………………..……7, 9

United States v. Davila,
133 S.Ct. 2139 (2013)……………………………………………………………….………4, 10

United States v. Ebel,
299 F.3d 187 (3d Cir. 2002)……………………………………..…………………...………..4

United States v. Kyle,
2013 WL 5813119 (9th Cir. Oct. 30, 2013)………..…………………………..………………7

United States v. Pena,
720 F.3d 561 (2013)……………………………………………………….………..8, 9, 10

United States v. Werker,
535 F.2d 198 (2d Cir. 1976)……………………………………………………….…………..4

Eliyahu Weinstein, by his attorneys, respectfully submits this memorandum of law in support of his motion to withdraw his plea of guilty in *United States v. Weinstein*, 11-CR-701 (JAP) on the grounds that the Court participated in plea negotiations in violation of Rule 11(c)(1) of the Federal Rules of Criminal Procedure. Because the Court's participation in those plea discussions was a coercive influence on Mr. Weinstein's decision to plead guilty, Mr. Weinstein should be given the opportunity to withdraw his guilty plea in this case.

## STATEMENT OF FACTS

Eliyahu Weinstein was arrested on a complaint on August 12, 2010 in connection with his alleged operation of a $200 million investment fraud scheme. (Dkt ## 1, 2). In his first application for pretrial release, Weinstein, through counsel, asserted his innocence, arguing that the alleged victims of his fraud scheme, "in reality, are unregulated money lenders and 'investors,' who had collected funds from other 'investors,' and who charged Mr. Weinstein high rates of interest, often well beyond the statutory usury level, in order to make millions of dollars from real estate investments that Mr. Weinstein found." (Dkt #9). Weinstein characterized the case as one "rooted in the claims of 'investors' who had gladly reaped the benefits in good times, and sued him when the good times ended." (*Id.*).

On October 27, 2011, over a year after he was arrested on the Complaint, Weinstein was indicted on charges of wire fraud conspiracy, wire fraud, bank fraud, and money laundering. (Dkt # 38). At Weinstein's arraignment, the Court set a trial date for January 2013. (11/15/2011 Tr. at 10). Several months later, the parties submitted pretrial motions. (Dkt. ## 52-54). In late November 2012, the government provided Weinstein's then-counsel with a plea offer that included a proposed sentence of 5 to 10 years' imprisonment. (Weinstein Decl. ¶ 4). Weinstein executed the plea agreement and transmitted it to the government. However, the government

rejected the plea for the asserted reason that the plea was sent to the government one day after the deadline the government had set for Weinstein's response. (*Id.* ¶5). The government rejected Weinstein's acceptance and told Weinstein's attorneys that the 5 to 10 year plea offer was off the table. (*Id.* ). The government said that if Weinstein wished to plead guilty, any new plea offer would be less favorable to him than the previous offer. (*Id.*). Weinstein declined to enter into any other plea agreement. (*Id.* ¶5).

At the conference on pretrial motions held on December 3, 2012, Weinstein's attorneys and the government discussed the status of plea negotiations with the Court in chambers, off-the-record. (Weinstein Decl. ¶6). Weinstein waited in a conference room with his wife, civil attorneys, and others. (*Id.*). Weinstein's attorneys returned to the conference room and reported to him that in the discussions in chambers, the government attorneys refused to put the 5 to 10 year offer back on the table. (*Id.* ¶7). They also reported, however, that the Court said that if Weinstein took a guilty plea under a less favorable offer, fulfilled his restitution obligation, and participated in an asset deposition, the Court would "remember" the original 5 to 10 year offer. (*Id.* ¶8). Weinstein's counsel also reported that, in sum and substance, the Court told them to tell Weinstein that in all his years as a Magistrate Judge and District Judge, he never had an acquittal in his courtroom. (*Id.*). Weinstein declined to enter a plea. (*Id.* ¶9).

Nine days after the hearing, one of Mr. Weinstein's two lead attorneys moved for permission to withdraw from representing Weinstein, which the Court granted on December 18, 2012. (Dkt. ## 64, 65). With less than a month remaining until trial, then-scheduled for January 7, 2013, Weinstein retained new counsel to represent him, for which new counsel was paid a $1,000,000 retainer fee. (*Id.* ¶10). The parties proceeded to trial, filing pretrial documents such as proposed *voir dire* and requests to charge. (Dkt. ##67, 68, 71).

On January 2, 2013, five days before the date jury selection was to begin, Weinstein met with his new counsel at their offices in New York. (Weinstein Decl. ¶11). Counsel reported that they had a conversation with the Court moments earlier, in which the Court asked whether there was a possibility that the case would be disposed of with a guilty plea prior to trial. (*Id.*). Counsel stated that the Court said, in sum and substance, that: (i) if Weinstein were to plead guilty, perform restitution, and participate in an asset deposition, "all doors will be open to him"; (ii) the Court was familiar with the history of the plea discussions, and would consider the government's previously-extended 5-10 year offer in imposing sentence; and (iii) if Weinstein proceeded to trial and was convicted of even one count, "all doors will be closed to him." (*Id.* ¶12). On the following day, January 3, 2013, Weinstein entered a guilty plea to wire fraud conspiracy and money laundering pursuant to a plea agreement. (Dkt #74 at 1). The sentencing range under the agreement was 0 to 300 months. Although the government had alleged that Weinstein had perpetrated a $200 million fraud, Weinstein only allocated to fraud and money laundering involving less than half a million dollars. (1/3/12 Tr. at 24).

As required by the plea agreement, Weinstein agreed to forfeiture in the amount of $2 million, to provide restitution, and to participate in a deposition in which he would provide a "full accounting" of the proceeds of the transactions set forth in the Indictment. (*Id.* at 5). The plea agreement further provided that Weinstein could argue the relevance of any restitution payments or forfeited assets "at the time of sentencing as part of his acceptance of responsibility and/or pursuant to any factor listed in 18 U.S.C. § 3553(a)." (*Id.* at 6).

On January 17, 2013, Weinstein's counsel moved to relax the travel and curfew restrictions of Weinstein's pretrial release "in order to enable him to fulfill the restitution obligation set forth in his plea agreement." (Dkt. # 75 at 1). In support of that motion,

Weinstein's counsel noted that Weinstein's fulfillment of his restitution obligation "[b]oth the Court and the government *have made it clear* that Mr. Weinstein's fulfillment of his restitution obligation is of utmost importance." (*Id.* at 2) (emphasis added). Furthermore, at the hearing on the bail application, Weinstein's counsel stated that restitution "is something that is *clearly very important to the Court* and important to sentencing." (2/11/13 Tr. at 20) (emphasis added).

## ARGUMENT

**I.    District Judges Are Prohibited From Participating In Plea Discussions Under The Federal Rules of Criminal Procedure**

The Federal Rules of Criminal Procedure absolutely prohibit a district judge from participating in plea discussions. Indeed, Rule 11 states categorically that "[t]he court shall not participate in any such discussions." Fed. R. Crim. P. 11(c)(1). *See also*, *United States v. Ebel*, 299 F.3d 187, 191 (3d Cir. 2002) (Rule 11's "prohibition of judicial involvement in plea negotiations is a 'bright line.'"). The Rule and "commentaries regarding this injunction, and consideration of its intendment, leave no room for doubt that its purpose and meaning are that the sentencing judge should take no part whatever in any discussion or communication regarding the sentence to be imposed prior to the entry of a plea of guilty or conviction, or submission to him of a plea agreement." *United States v. Werker*, 535 F.2d 198, 201 (2d Cir. 1976). As the Ninth Circuit stated in *United States v. Bruce*, 976 F.2d 552. 555 (9th Cir. 1992) (citations omitted) (emphasis in original):

> The command of [Rule 11] . . . with regard to plea negotiations is simple and admits of no exceptions: "[t]he court shall not participate in any such discussions.' Before the parties have concluded a plea agreement and have disclosed that final agreement in open court, 'the judge must refrain from *all forms* of plea discussions." . . . [Rule 11] . . . is "an *absolute prohibition* on all forms of judicial participation in . . . the plea negotiation process."

Rule 11's proscription against a court's participation in plea discussions was introduced as part of the 1974 Amendments to the Rule. *See United States v. Davila*, 133 S.Ct. 2139, 2146

4

(2013). Prior to the amendment, judicial participation in plea negotiations was "common practice." *Id.* "Nonetheless, the prohibition was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial." *Id.* Moreover, "barring judicial involvement in plea discussions would facilitate objective assessments of the voluntariness of a defendant's plea." *Id.*

Courts have viewed the prohibition against judicial involvement in plea discussions as serving three principal purposes. First, "it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea." *United States v Baker*, 489 F.3d 366, 370-71 (D.C. Cir. 2007) (citations omitted). Second, a judge's involvement in plea discussions may affect his impartiality. "By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice." *Id.* Third, a judge's participation in plea discussions skews the impression of his proper role in the proceedings. "The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins in the negotiations." *Id.* As the D.C. Circuit stated in *Baker*:

> Where the judge has unilaterally injected himself into the plea process and possibly undermined plea negotiations between the defendant and government by appearing to tacitly offer a "better deal" than the government, the defendant is placed in a unique predicament with no good options. If he objects, the defendant (1) repudiates the judge's tacit offer, (2) risks angering the judge by implicitly accusing him of impropriety, (3) strengthens the government's bargaining position in the plea negotiations, and (4) possibly encourages the court to impose a more severe sentence. On the other hand, if the defendant remains silent, he is forced to divine whether the judge really did make an implicit offer, and whether to accept the government's less favorable offer or take his chances with the judge.

*Id.* at 372.

A court's participation in plea negotiations is generally motivated by compassion and good intentions, as is undoubtedly the case here. *See, e.g., Bruce*, 976 F.2d at 558. Indeed,

5

where, as here, a potentially severe penalty is at stake in the event of a conviction, "[i]t is rational and humane in such circumstances for judges to want to influence the defendant to accept a reasonable plea bargain and avoid the possibility of prolonged and unduly harsh incarceration." *Id.* Nevertheless, "[n]o matter how benign the court's intent, its 'awesome power to impose a substantially larger or even maximum sentence in excess of that proposed is present whether referred to or not,' and '[a] defendant needs no reminder that if he rejects the proposal, stands on his right to trial and convicted, he faces a significantly longer sentence.'" *Id.* (citations omitted). Put simply, a district judge's participation in plea discussions is often inherently coercive. Here, the Court's participation in plea negotiations influenced Weinstein's decision to plead guilty, and thus, he should be permitted to withdraw his plea under Rule 11.

Courts routinely have vacated convictions where the record establishes that a defendant's decision to plead guilty was unduly influenced by a court's participation in plea negotiations. For example, in *Baker*, the D.C. Circuit vacated a conviction where the defendant pled guilty after the judge suggested that he would sentence him to the low end of the Guideline range as he did previously with another defendant in a similar case. *Baker*, 488 F.3d at 368-69. In *United States v. Bradley*, 455 F.3d 453, 457 (4th Cir. 2006), the Fourth Circuit vacated a conviction where defendants entered guilty plea after the judge commented after the trial began that, "I don't know what the status was at any time about the plea negotiations in this case, and I don't know if there is a possibility for any further discussions. . . . [F]rankly, based on what I am hearing now, . . . your clients may be better off pleading to the indictment. And I say that in all candor."

Likewise, the Tenth Circuit vacated a conviction where the defendant pled guilty after the judge stated that if he did not take a plea and was convicted at trial, "the sentence will be a harsh

one." *United States v. Cano-Varela*, 497 F. 3d 1122, 1129 (10th Cir. 2007). On the other hand, if the defendant entered into a cooperation agreement, "it releases me from any obligation to impose a sentence-a mandatory minimum sentence or a sentence under the guideline range. I can sentence you in a way I deem appropriate, and your lawyer could argue that you're entitled to a couple more levels off for acceptance." *Id.* The Tenth Circuit found the judge's statements violated Rule 11 and substantially affected the defendant's rights because "discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned." *Id.* at 1133. As the Tenth Circuit reasoned:

> Before the in-court status conference, Mr. Cano-Varela expressed the desire to switch lawyers and to proceed to a jury trial. But the person who would be sentencing Mr. Cano-Varela pointed out the contrasting results, the defendant changed his mind and pleaded guilty. Even if the defendant changed his mind for some reason unrelated to this colloquy, the judge's remarks tainted everything that followed.

*Id.* at 1134.

Similarly, in *Bruce*, the Ninth Circuit vacated a conviction based on a guilty plea where the judge suggested that the defendants take a plea agreement rather than go to trial and face a life sentence: "We are talking about a life sentence . . . Versus a prospective 42 months [under the plea agreement. . . . I would think seriously about it, both of you. Life in prison is a long time. It is really nothing to play with." *Bruce*, 976 F.2d at 555. The Ninth Circuit also recently vacated a conviction where the defendant pled guilty only twelve days after the district judge said that he would impose a life sentence if the defendant was convicted at trial. *United States v. Kyle*, 2013 WL 5813119 (9th Cir. Oct. 30, 2013).

The Fifth Circuit's recent decision in *United States v. Pena*, 720 F.3d 561 (5th Cir. 2013), vacating a conviction on the grounds that the judge violated Rule 11's proscription against judicial participation in plea negotiations, also is instructive. There, the defendant pled guilty

7

after the judge suggested he would not give a defendant full credit for accepting responsibility unless he resolved a related civil interpleader action also pending before the same judge. *Id.* at 571. The Fifth Circuit held that the judge's comments violated Rule 11's prohibition against judicial participation in plea discussions and affected the defendant's substantial rights. Central to its decision were certain key factors. First, the court found that the judge's statements indicated that he desired a guilty, which "is pressure enough." *Id.* at 572 (citation omitted). In addition, by indicating his preference for a guilty plea, the judge's comments improperly suggested that he "had already made a determination as to Pena's guilt." *Id.* Second, the statements were made *before* the parties had entered into a plea agreement, and "the fact that this comment was injected into the discussions while the parties were still [in plea discussions] . . . is critical. It is precisely this type of participation that is prohibited by Rule 11." *Id.* Third, the fact that the defendant pled guilty just five days after the judge made his comments reflects "a temporal proximity that supports a finding of prejudice." *Id.* at 574. Fourth, the defendant made extensive efforts after the plea to resolve the interpleader matter, "illustrat[ing] the impact of the court's condition on Pena's perception of the terms of his agreement." *Id.* at 576. The Fifth Circuit vacated the conviction, notwithstanding the district judge's good intentions and "best efforts," because "his comments had unintended consequences." *Id.* at 577.

II. **The Court's Participation In Weinstein's Plea Discussions Violated Rule 11 And Impacted Weinstein's Decision To Waive His Right To Trial**

Here, the Court's participation in plea discussions unquestionably violated Rule 11 and the impact the Court's statements had on Weinstein's decision to plead guilty is palpable from the record. After the government refused to agree to reinstate its five-to-ten year plea, Weinstein plainly was determined to go to trial. He retained one of the nation's preeminent law firms to represent him at trial for a substantial fee. Only days before trial, Weinstein visited his

attorneys' offices to prepare. When his attorneys conveyed to him that the judge said "all doors would be open" to Weinstein if he pled guilty, fulfilled his restitution obligation, and participated in an asset deposition, Weinstein naturally viewed it as a message that the judge preferred a guilty plea over trial.

Under the circumstances, Weinstein was placed in a position where he believed that if he proceeded to trial, he would risk displeasing the court. *See, e.g.*, *Pena*, 720 F.3d at 572. Furthermore, the court's statements suggested that it possibly had made a determination that Weinstein was, in fact, guilty of the charged offenses. *Id.* In addition, by stating that "all doors would be open" if Weinstein took a plea, but that "all doors would be closed" if he was convicted of even one count at trial, "[n]o matter how benign the court's intent," the Court conveyed to Weinstein its "'awesome power to impose a substantially larger or even maximum sentence in excess of tht proposed.'" *Bruce*, 976 F.2d at 558 (citations omitted). It is well established that "discussion of the penal consequences of a guilty plea as compared to going to trial is inherently coercive, no matter how well-intentioned." *Cano-Varela* at 1133. Here, the Court went even further in suggesting that if Weinstein pled guilty and fulfilled his restitution obligation, he would consider the earlier plea offer of five to ten years that Weinstein once agreed—perhaps belatedly—to accept. On the other hand, only a month earlier, the Court reportedly instructed counsel to tell Weinstein that no defendant was ever acquitted in his courtroom. In these circumstances, the Court's statements to Weinstein's new counsel on January 2, 2013, in combination with its statements to prior counsel one month earlier at the hearing on pretrial motions, were inherently coercive, regardless of the Court's good intentions.

That Weinstein was influenced by the Court's statements concerning plea negotiations is beyond dispute. Weinstein, who had been gearing up for trial with expensive, high-powered

9

attorneys he had just retained, immediately changed course and pled guilty the very next day after the Court's reported conversation with counsel. As the court in *Pena* suggested, this "temporal proximity . . . supports a finding of prejudice." *Pena*, 720 F.3d at 574. *See also*, *Davila*, 133 S.Ct. 2139, 2013 (2013) (contrasting a plea that follows "soon after" judicial participation with a three-month delay). Furthermore, Weinstein allocuted to crimes involving a small fraction of the dollar amount of the alleged fraud, suggesting that Weinstein strongly disagreed with the government's view of the case, and believed that the bulk of his transactions were innocent.

Moreover, the statements of Weinstein's counsel and efforts to modify Weinstein's bail restrictions so that Weinstein could fulfill his restitution obligation, which, in the words of Weinstein's counsel, was "something that is clearly very important to the Court and important to sentencing," (2/11/13 Tr. at 20) evidences the impact of the Court's comments with respect to restitution. *Cf. Pena*, 720 F.3d at 575 ("Subsequent proceedings also illustrate the impact of the court's condition on Pena's perception of the terms of his guilty pleas: He persisted in trying to do something about. . . [the interpleader] matter long after the district court had retracted its plea condition.").

Because the Court participated in plea negotiations, which violates Rule 11, and because Weinstein was influenced by the Court's participation to plead guilty instead of proceed to trial, Weinstein should be permitted to withdraw his plea and proceed to trial as he originally contemplated and intended.

## CONCLUSION

For all the foregoing reasons, the Court should permit Eliyahu Weinstein to withdraw his plea of guilty and proceed to a trial of the charges against him that are set forth in the Indictment.

Dated: New York, New York  /s/ Eric M. Creizman
November 13, 2013  Eric M. Creizman
 CREIZMAN PLLC
 565 Fifth Avenue, Fl. 7
 New York, New York 10017
 Tel.: (212) 972-0200
 Fax: (646) 200-5022
 Email: ecreiz@creizmanllc.com

 *Attorneys for Eliyahu Weinstein*