

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7th floor*  973-645-2700
*Newark, New Jersey 07102*

November 21, 2013

**By ECF and E-Mail**
Hon. Joel A. Pisano
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

  Re: <u>United States v. Eliyahu Weinstein</u>, Crim. No. 11-701 (JAP)

Dear Judge Pisano:

  Please accept this letter brief in lieu of a more formal submission as the Government's opposition to defendant Eliyahu Weinstein's motion to withdraw his guilty plea (Dkt. No. 123).

**PRELIMINARY STATEMENT**

  More than eleven months ago, Weinstein pled guilty to orchestrating a massive real estate-based Ponzi scheme and laundering the proceeds of that scheme. His sentencing hearing is scheduled to begin on December 9, 2013.

  Now, almost a year after his guilty plea, and after his May 2013 arrest on unrelated charges of stealing an additional $7 million from new victims, Weinstein has filed a motion to withdraw his guilty plea. The motion is supported by no evidence except a self-serving three page "declaration" from Weinstein himself alleging, at its core, that this Court violated the strictures of Federal Rule of Criminal Procedure 11 (Dkt. No. 125 ("Weinstein Decl.")).

  Weinstein's declaration contradicts his guilty plea allocution (given under oath) (Ex. A). It contradicts his written application to plead guilty (given under oath) (Dkt. No. 73). It contradicts the certification of his then-counsel, a former United States Attorney for this District (given under oath) (Dkt. No. 73 at 8). And the declaration contains provable falsehoods – for example, that Weinstein

submitted a signed plea agreement "one day after the government's deadline" (Dkt. No. 125 ¶ 5), when email correspondence demonstrates conclusively that the plea offer expired on November 9, 2012 and Weinstein only signed a marked-up counteroffer nearly a month later, on December 4, 2012.

  The declaration does not even allege that Weinstein heard this Court say anything that would constitute a Rule 11 violation. Unlike the cases he cites in which a Rule 11 violation was found as a result of a Court's participation in the plea process, Weinstein's declaration does not point to a single word on the record that even approached a Rule 11 violation. Instead, the declaration only alleges that Weinstein's <u>lawyers</u> related things to Weinstein that this Court supposedly told those lawyers. But Weinstein's motion does not include any affidavits, certifications, or declarations from those lawyers. The declaration does not even say that Weinstein would have gone to trial but for what he alleges occurred. For all these reasons, Weinstein's declaration cannot be trusted, and his motion should be denied without a hearing.

  Weinstein's true motives for seeking to withdraw his guilty plea are clear given the broader context of this case. He has buyer's remorse. Weinstein has had eight different lawyers and law firms represent him in this prosecution (so far). His plea withdrawal motion comes on the heels of yet another motion, filed by Weinstein's most recent counsel, demanding specific performance of the very plea agreement he now claims was fatally infected by this Court's supposed Rule 11 violation (Dkt. No. 98). These motions seek diametrically opposed relief. But both share one fundamental characteristic: They are the last gasps of a defendant desperate to change the bargain he struck knowingly and voluntarily almost a year ago.

  Weinstein is facing a lengthy prison term because he stole hundreds of millions of dollars as part of his first scheme, and because he was caught stealing millions more in an unrelated fraud while under indictment for that first scheme. Weinstein was not pressured or coerced by anyone into accepting a plea. Instead, he clearly fears that this Court will see him for what he is: an inveterate fraudster who will do and say anything to escape responsibility for his actions. Perhaps Weinstein wishes that he had accepted a prior plea deal that might have resulted in a lesser sentence. But the Court of Appeals has held specifically that this kind of gamesmanship is not a sufficient reason to allow a defendant to withdraw his plea of guilty.

  Weinstein must bear a "substantial" burden before he can withdraw his plea, and his belated motion does not come close to carrying this burden. If Weinstein could withdraw his plea based on a single flimsy affidavit, contradicted by what transpired on the record nearly a year ago, it would nullify what the Supreme Court has called the "grave and solemn act" that is a

plea of guilty.  Indeed, the entire plea process – the application to enter a guilty plea, the certification of counsel, the lengthy plea allocution – exists precisely because the decision to plead guilty is a profound one.  Permitting Weinstein to withdraw his plea here, or even engaging in a hearing, would undermine this entire process:  any defendant, his feet suddenly chilly less than a month from sentencing, could wave a self-serving affidavit before the Court and nullify all that has gone before.  That is not the law.  Weinstein's motion should be denied without a hearing and this case should proceed to sentencing on December 9, 2013.

**FACTS**

    A. <u>Background</u>

Weinstein was first arrested in August 2010 on a two count complaint (Dkt. No. 1), charging him with wire and bank fraud for his operation of a massive, long-running scheme which defrauded investors out of more than $200 million ("<u>Weinstein I</u>").

While on pretrial release, Weinstein continued to commit more fraud.  In August 2011, a grand jury handed down a forty-five count Indictment, charging Weinstein with conspiracy to commit wire fraud, wire fraud, wire fraud while on pretrial release, bank fraud, and money laundering (Dkt. No. 38).  Some of those charges addressed the crimes the Government then knew Weinstein had committed while on pretrial release.  After his indictment, Weinstein retained Henry E. Klingeman, a prominent attorney in New Jersey, and David I. Schoen, a well-known lawyer from Alabama with a national practice.  This Court set a trial date of January 7, 2013.

    B. <u>The November 2012 Plea Offer Is Considered, Rejected, and Withdrawn</u>

Before and after his indictment, the Government offered Weinstein various plea deals.  On November 5, 2012, the Government sent a plea offer to Mr. Klingeman and Mr. Schoen, which by its terms expired on November 9, 2012 (the "November 2012 Plea Offer").  The parties e-mailed the Court's deputy and set a plea hearing date for the following week.[1]  On November 9, 2012, however, Mr. Klingeman e-mailed the Government and stated that Weinstein had not signed the November 2012 Plea Offer.  Later that day, Mr. Klingeman and Mr. Schoen asked the Government for an extension of the deadline for the November 2012 Plea Offer until November 12, 2012.  The

---

[1] Should the Court request them, the Government is prepared to provide copies of the correspondence referenced herein.

Government agreed. On November 12, 2012, Mr. Klingeman e-mailed the Government that Weinstein had still not signed the November 2012 Plea Offer. The Government responded by e-mail, formally withdrawing the November 2012 Plea Offer.

    C. <u>Weinstein "Accepts" The November 2012 Plea a Nearly a Month (Not a Day) Late</u>

On December 3, 2012, this Court held a pretrial conference, which Mr. Klingeman and Mr. Schoen attended. It was at this meeting that Weinstein claims this Court first made certain statements to his attorneys, which Weinstein alleges were then relayed to him (Weinstein Decl. ¶¶ 6-8). Weinstein has not submitted any statements, certifications, or affidavits from either Mr. Klingeman or from Mr. Schoen relating to this supposed conversation.

On December 5, 2012, Mr. Klingeman's associate sent an e-mail to the Government, attaching a marked-up copy of the November 2012 Plea Offer signed by Weinstein on December 4, 2012, and asked that the Government accept it. The marked-up copy included handwritten annotations changing the counts to which Weinstein would plead, the restitution due to various victims, and other alterations. The Government rejected this new counteroffer, and noted in an e-mail response that the November 2012 Plea Offer had expired nearly a month prior.

The parties continued to discuss a plea deal that could be acceptable to both sides. For example, on December 13, 2012, the Government sent two new plea offers to Weinstein (the "December 2012 Plea Offers"). Weinstein rejected both of the December 2012 Plea Offers. The parties proceeded to prepare for trial.

    D. <u>Proskauer Enters</u>

On December 19, 2012, Mr. Schoen withdrew from the case (Dkt. No. 65). On December 31, 2012, Weinstein acquired a new set of attorneys, from the international law firm of Proskauer Rose (Dkt. No. 69). These new attorneys were led by Robert J. Cleary, the former co-chairman of Proskauer's litigation department and the former United States Attorney for both the District of New Jersey and the Southern District of Illinois.

    E. <u>The January 2013 Plea Offer and Supposedly Improper Conversation</u>

The parties continued to discuss a negotiated resolution to the case. The Government eventually offered Weinstein a Rule 11(c)(1)(C) plea agreement, which required: a sentence within a range of 0–300 months' imprisonment;

forfeiture of $2 million; a deposition regarding the sources and destinations of the money he stole; and a full accounting of those funds (the "January 2013 Plea Offer").

Weinstein alleges that on January 2, 2013, the Court spoke with Mr. Cleary, and made certain statements, which Mr. Cleary then relayed to Weinstein (Weinstein Decl. ¶¶ 11-12). But Weinstein has not provided any statements, certifications, declarations, or affidavits from Mr. Cleary or any other Proskauer attorney supporting the motion to withdraw the guilty plea.

F. The Plea Documents, Application, Allocution, and Attorney Certification all Declare Under Oath that Weinstein's Plea Was Not Coerced

On January 3, 2013, Weinstein signed the January 2013 Plea Offer (Dkt. No. 74). The plea agreement stated, directly above Weinstein's signature, that

> I have received this letter from my attorney, Robert J. Cleary, Esq. I have read it. My attorney and I have discussed it and all of its provisions . . . . **I understand this letter fully. I hereby accept its terms and conditions** and acknowledge that it constitutes the plea agreement between the parties. **I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.**

(Id. at 7 (emphasis added).)

Also on January 3, 2013, Weinstein was present while one of the Proskauer attorneys, Mark Harris, filled out an "Application for Permission to Enter Plea of Guilty" (the "Plea Application" (Dkt. No. 73.)) Weinstein signed that document as well, "in open court in the presence of [his] lawyer." (Id. at 7.) Weinstein also certified "that the foregoing information and statements herein are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment." (Id.) Weinstein specifically certified the following statements, among others, to be true:

- Paragraph 24: "I hereby declare that no officer or agent of any branch of government, (Federal, State or Local), nor my lawyer, nor any other person, has made **any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any other form of leniency if I plead GUILTY.**" (Id. at 4, ¶ 24 (emphasis added).)

- Paragraph 36: "**I hereby declare that I have not been forced, coerced, or threatened in any manner by any person** to plead GUILTY to these charge(s)." (Id. at 5, ¶ 36 (emphasis added).)

- Paragraph 44: "**I offer my plea of GUILTY freely and voluntarily and of my own accord** with full understanding of all matters set forth in the [INDICTMENT], in this application, and in the certification of my lawyer which is attached to this application." (Id. at 6, ¶ 44 (emphasis added, brackets in the original).)

The same day, Mr. Cleary completed a "Certification of Counsel" for the Plea Application. (Id. at 8.) Mr. Cleary certified that "[t]o the best of my knowledge and belief the statements, representations, and declarations made by the defendant in the foregoing Application **are in all respects true and accurate**." (Id. at 8 ¶ 3 (emphasis added).) Mr. Cleary also certified that "[i]n my opinion **the plea of GUILTY as offered by the defendant . . . is voluntarily made** with understanding of the consequences of the plea." (Id. at 8 ¶ 9 (emphasis added).)

Weinstein then pled guilty before this Court. At the hearing, this Court began by telling Weinstein that "if you give any statement here in court that you know to be false, you can be prosecuted for perjury. I don't expect you'll give me any false statements, but I don't want you to say something that turns out to be incorrect because you don't understand the question, okay?" (Ex. A at 4:8-12.) Weinstein responded, "Yes." (Id. at 4:13.) Weinstein confirmed that he had "skimmed" the Plea Application with his attorneys, that he had provided the answers in the Plea Application, and that what was written in the Plea Application (by one of his lawyers) was accurate. (Id. at 8:5-9:11.) The Court asked, "[d]o you understand that if I accept your plea today, you are going to be bound by all of the terms that appear in this plea agreement and so will the United States Attorney?" (Id. at 10:13-15.) Weinstein replied, "I do." (Id. at 10:16.) The Court asked, "do you realize that you're not going to be able to change your mind and take back any of the terms that appear in this plea agreement?" (Id. at 10:17-19.) Weinstein replied, "I do." (Id. at 10:20.)

The Court then asked of Mr. Cleary the following: "Mr. Cleary, you represent that Mr. Weinstein gave all of the answers -- that Mr. Weinstein indicated his understanding and acceptance of the plea agreement and that he signed it voluntarily?" (Id. at 11:15-18.) Mr. Cleary responded, "I do, your Honor." (Id. at 11:19.)

The Court then turned to Weinstein's understanding of his rights to plead not guilty and proceed to trial. The Court asked, "[n]ow, before we go any

further, do you understand that you do not have any obligation to plead guilty?" (Id. at 13:1-2.) Weinstein replied, "Yes." (Id. at 13:3.) After confirming that Weinstein knew he had the right to a trial, and all of the rights attendant to a trial, the Court asked, "And is it your decision to waive your right to trial?" (Id. at 13:24.) Weinstein replied, "Yes, it is." (Id. at 13:25.)

The following colloquy then took place:

Q: Now, has anybody forced you in any way in connection with this decision?
A: No.
Q: Anybody make any inducements to you to waive your right to trial, other than what appears in the plea agreement?
A: No.
Q: Are you comfortable with your decision?
A: Yes.
Q: And is this a decision you have made after thinking about it and having enough time to speak to your lawyers, members of your family and anybody else who is important to you?
A: Yes.

(Id. at 14:1-12.)

### G. Months Pass With No Complaints

For the next several months, Weinstein and his attorneys prepared for sentencing. Indeed, Weinstein's lawyers filed motions to modify his conditions of release, which were granted in part. Weinstein's lawyers sought to allow him to travel throughout the United States to collect money that he claimed to be owed, so that he could pay restitution under the plea agreement. In all of this motion practice, there was no mention of withdrawing the guilty plea.

### H. Weinstein is Arrested Again

Yet Weinstein was still stealing. In February 2013, the Government learned, for the first time, that Weinstein was engaged in another, separate fraud scheme, with different victims, concerning purported investments in Facebook, Inc. Therefore, in May 2013, the Government filed a thirteen count complaint against Weinstein (and others), charging him with wire fraud conspiracy, wire fraud while on pretrial release, and money laundering ("Weinstein II") (United States v. Weinstein, et al., Mag. No. 13-8148 (MCA), Dkt. No. 1).

    I. <u>Weinstein Obtains Yet Another Lawyer, Who Reviews Case Anew; Still No Motion to Withdraw Plea</u>

Because the <u>Weinstein II</u> complaint made clear that Weinstein had used the <u>Weinstein II</u>'s victims' money to pay his attorneys from <u>Weinstein I</u>, Mr. Cleary and Mr. Klingeman withdrew from both cases. Weinstein was remanded into custody pending sentencing (Dkt. No. 90). Weinstein was appointed new counsel, Howard Brownstein, another highly qualified practitioner with decades of experience in this District. Mr. Brownstein met with Weinstein and with the Government (separately) numerous times, in attempt to get up to speed on the case. Again, during the entire period of Mr. Brownstein's representation of Weinstein, no motion to withdraw the guilty plea – and no allegation of any kind of Rule 11 violation – was made.

    J. <u>Weinstein's Current Counsel Enters, and Reviews Case Anew; Still No Motion to Withdraw Plea</u>

In August 2013, Weinstein's current counsel entered the case, and promptly filed a motion to dismiss the <u>Weinstein II</u> complaint, demanding specific performance of the plea agreement (Dkt. No. 98). Weinstein's current counsel also filed a motion for bail (Dkt. No. 100). Once more, with all of these motions, there was no mention of pressure, of coercion, of duress, or any basis to withdraw the plea because of improper judicial intervention.

In October 2013, the Government attempted to depose Weinstein, as contemplated by the plea agreement. Weinstein invoked his Fifth Amendment right not to incriminate himself – but did not move to withdraw his plea.

    H. <u>Eleven Months After His Guilty Plea, Weinstein Moves to Withdraw It</u>

On November 13, 2013, Weinstein finally moved to withdraw his guilty plea – 314 days after pleading guilty.

**ARGUMENT**

    A. <u>Legal Standards</u>

A plea of guilty is "a grave and solemn act, which is accepted only with care and discernment." <u>United States v. Hyde</u>, 520 U.S. 670, 677 (1997) (quotation marks omitted). Consequently, "[o]nce a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." <u>United States v. Jones</u>, 336 F.3d 245, 252 (3d Cir. 2003). Rather, the defendant must show a "'fair and just reason' for the withdrawal of his plea."

United States v. King, 604 F.3d 125, 139 (3d Cir. 2010) (quoting Fed. R. Crim. P. 11(d)(2)(B)).

"The burden of demonstrating a 'fair and just' reason falls on the defendant, and that burden is substantial." Jones, 336 F.3d at 252; see also United States v. Isaac, 141 F.3d 477, 485 (3d Cir. 1998). For example, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." Jones, 336 F.3d at 252 (quotation marks omitted).

To determine if a defendant has carried his "substantial" burden of showing a "fair and just reason" for withdrawing a plea, a district court should consider whether: "(1) the defendant asserts his innocence; (2) the defendant proffered strong reasons justifying the withdrawal; and (3) the government would be prejudiced by the withdrawal." King, 604 F.3d at 139 (quotation marks omitted); see also United States v. Huff, 873 F.2d 709, 711 (3d Cir. 1989). The decision to decide a motion to withdraw a guilty plea is left to the sound discretion of the District Court. See Jones, 979 F.2d at 318 ("The district court retains a great deal of discretion to deny a withdrawal motion."). As a result, the Court of Appeals will not disturb the District Court's decision absent an abuse of discretion. See United States v. Brown, 250 F.3d 811, 815 (3d Cir. 2001).

The defendant's burden is "substantial" because "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). See also United States v. Dickler, 64 F.3d 818, 823 (3d Cir. 1995) ("when a defendant under oath expressly admits facts at a plea hearing in the course of persuading the court to accept a plea, he may not thereafter deny those facts"); United States v. Parker, 874 F.2d 174, 177-78 & n.1 (3d Cir. 1989); United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (citation omitted) (defendant's present statements which only contradicted what he said at the guilty plea hearing were not a sufficient ground to withdraw a plea of guilty); United States v. Maher, 108 F.3d 1513, 1530 (2d Cir. 1997) (defendant's statements under oath at allocution "carry a strong presumption of verity"; court must draw all permissible inferences in favor of the government and against the defendant).

> B. There is No Claim of Innocence, and the Government Would be Prejudiced

The first and third prongs of the King test may not be dispositive here in light of the nature of Weinstein's claim: improper judicial participation in plea negotiations. Nonetheless, they weigh heavily against accepting Weinstein's

say-so at face value.  First, of course, Weinstein does not claim that he is actually innocent.  One "fair and just" reason that a defendant could have for seeking to withdraw a plea is that he did not commit the crime to which he pled.  But make no mistake:  Weinstein ripped off his victims, to the tune of more than $200 million.  He knows it, and his victims certainly know it.  He does not argue to the contrary.

Second, the Government would be prejudiced if Weinstein were allowed to escape his guilty plea.  At least one potential witness, David Cohen, has died.  Other witnesses' memories may have faded because Weinstein waited nearly a year to "remember" the allegations in his affidavit.  Beyond that, the Government spent an enormous amount of time and energy preparing for a massive trial, which would have taken more than a month to conduct.  Recall that Weinstein pled a mere four days before jury selection was to start.  Three Assistant United States Attorneys were assigned to the trial team, and put aside virtually all other matters in the weeks leading up to the trial.  The Government met with dozens of witnesses, flying several in from out of state.  If the plea were to be withdrawn, all of this effort would have to be duplicated.[2]

In addition, the Government marked hundreds of exhibits and provided them to Weinstein in early December 2012.  The Government also marked nearly 300 items as Jencks material, and provided those documents to Weinstein on December 31, 2012.  In this District, Jencks material is ordinarily provided just days before a trial is to begin – at the earliest.  The Government has also disclosed significant amounts of information to the United States

---

[2] See generally United States v. Richardson, 225 F.3d 46, 52 (1st Cir. 2000) (noting prejudice caused by having to undergo a second trial); United States v. Jones, 168 F. 3d 1217, 1220 (10th Cir. 1999) (observing that prejudice exists where government personnel will have to disrupt work on current cases and will have to issue additional subpoenas requiring its witnesses to appear at trial and pay the witnesses' travel expenses); United States v. Strauss, 563 F.2d 127, 131 (4th Cir. 1977) (finding prejudice to the government where trial was scheduled to begin three days after plea and government had assembled witnesses from several states, holding that "the government would suffer prejudice if it had to reassemble its witnesses and prepare once again for the trial of the case"); United States v. Namkoong, 616 F. Supp. 579, 580-81 (E.D. Va. 1985) ("Assembling far-flung witnesses who are not Government employees is a task of some proportions.  Permitting them to scatter and then being required to reassemble them adds substantially to the problem—and to the expense of the United States. . . .  Further, the simple unfairness to the Government lawyers and to the Government witnesses twice to prepare themselves for trial at the defendants' desire is a sufficient prejudice under the circumstances of this case.").

- 10 -

Probation Office as part of the presentence investigation, including material to which Weinstein would otherwise not be entitled. If the plea were withdrawn, and Weinstein proceeded to trial, he would have an advantage because he has had the Government's exhibits and <u>Jencks</u> material for nearly a year, and now has the presentence report as well. Together, these are the keys to the Government's case.

Most fundamentally, should the plea be withdrawn, justice would again be delayed for the victims of Weinstein's crimes – crimes that, again, even he does not deny he committed. These dozens of victims are real people who have done nothing wrong. They have been waiting for years for a measure of closure, and for even the pittance of restitution that they may receive from Weinstein after he is sentenced.

    C.  <u>Weinstein's Single, Extraordinarily Belated, Declaration Should Not Entitle Him To A Hearing, Let Alone To Withdraw His Plea</u>

This motion therefore comes down to just one issue – has Weinstein "proffered strong reasons justifying the withdrawal"? He has not. Indeed, Weinstein has not even proffered a reason to have a hearing. Weinstein has exactly one thing in support of his motion: a three page declaration drafted more than 11 months after his guilty plea. That declaration, at its core, contends that this Court participated in the parties' plea negotiations in a way that violated Rule 11(c)(1). For that claim to have merit, Weinstein would have to prove that this Court actually <u>did</u> participate improperly in the parties' plea negotiations, which in turn induced Weinstein's guilty plea. See <u>United States v. Davila</u>, --- U.S. ---, 133 S. Ct. 2139 (2013) (holding that "vacatur of the plea is not in order if the record shows no prejudice to [defendant's] decision to plead guilty").[3]

---

[3] Under Rule 11, even if there were improper judicial participation in the parties' plea negotiations, the Government would have the opportunity to establish that the error was harmless. <u>See</u> Fed. R. Crim. P. 11(h); <u>Davila</u>, 133 S. Ct. at 2149 ("Rule 11(h), specifically designed to stop automatic vacaturs, calls for across-the-board application of the harmless-error prescription (or, absent prompt objection, the plain-error rule)"). Thus, even if there were a violation of Rule 11(c)(1), Weinstein cannot withdraw his guilty plea if "the record a whole" shows that his "substantial rights" were not affected. <u>United States v. Ebel</u>, 299 F.3d 187, 191 (3d Cir. 2002). Conversely, if the Government failed to show that any such error had no substantial and injurious effect on the decision to plead guilty, Weinstein could have a viable basis for withdrawing his guilty plea.

Unfortunately for Weinstein, his declaration does not even justify a hearing, let alone relief. That is because for at least four reasons, his declaration cannot be believed: <u>One</u>, it is directly contrary to the record in this case. <u>Two</u>, it contains demonstrably false statements, and so it should not be trusted. <u>Three</u>, it contains no statements actually made by this Court – and does not include any statement from anyone with first-hand knowledge of any statements made by this Court. <u>Four</u>, it is extraordinarily late, which, as numerous courts have held, makes it less believable and exposes Weinstein's true motives.

*1. Weinstein's Declaration Should Not Be Believed Because It Is Directly Contrary to the Record In This Case*

The record in this case, including numerous documents signed by Weinstein and by his counsel, and numerous statements made by Weinstein under oath, demonstrates beyond a doubt that Weinstein entered his plea knowingly and voluntarily. His belated "certification" to the contrary is the self-serving statement of a serial fraudster who has now been caught committing additional crimes, and is afraid of a significant and well-deserved sentence, nothing more. Simply put, he is lying when he said he was lying.

A "guilty plea is a grave and solemn act to be accepted only with care and discernment." <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970). Therefore, Courts place significant weight on the record made during the guilty plea process. Such statements are conclusive absent a credible reason for departing from them. See <u>United States v. Gonzalez</u>, 970 F.2d 1095, 1101 (2d Cir. 1992); <u>United States v. Bambulas</u>, 571 F.2d 525, 526 (10th Cir. 1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth"); <u>United States v. Moses</u>, 2010 WL 3521724, at *11 (D. Vt. Sept. 7, 2010) ("Sworn statements at a plea allocution are entitled to a strong presumption of veracity, so the Court gives weight to these representations.").

Here, Weinstein – and his then-counsel – made perfectly clear that Weinstein's guilty plea was not induced by any promises not reflected in the plea agreement. First, in his plea agreement, Weinstein signed just below the following statement: "I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement." (Dkt. No. 74 at 7.) For Weinstein's instant motion to succeed, this must be a lie.

Weinstein also made various statements in his Plea Application, signed that document, and certified that all of the statements in it were true. These

- 12 -

certified statements included that no one – not his lawyers, not the Court, not the prosecutors, no one – "has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any other form of leniency if I plead GUILTY." (Dkt. No. 73 at 4, ¶ 24.) Weinstein certified that "I hereby declare that I have not been forced, coerced, or threatened in any manner by any person to plead GUILTY to these charge(s)." (Id. at 5, ¶ 36.) And he certified that "I offer my plea of GUILTY freely and voluntarily and of my own accord with full understanding of all matters set forth in the [INDICTMENT], in this application, and in the certification of my lawyer which is attached to this application." (Id. at 6, ¶ 44.) For Weinstein's motion to succeed, all of these statements must be lies.

And for Weinstein's allegations to be believed, one would also have to believe that Mr. Cleary incorrectly certified that "[t]o the best of my knowledge and belief the statements, representations, and declarations made by the defendant in the foregoing Application are in all respects true and accurate." (Id. at 8 ¶ 3.) One would also have to believe that Mr. Cleary was also incorrect when he certified that "[i]n my opinion the plea of GUILTY as offered by the defendant . . . is voluntarily made with understanding of the consequences of the plea." (Id. at 8 ¶ 9.) And one would have to believe that Mr. Cleary was incorrect when he affirmed, in open court at the plea hearing, that Weinstein understood and accepted the plea agreement and that he signed it voluntarily. (See Ex. A at 11:15-19.)

What of the plea allocution? For Weinstein's motion to succeed, Weinstein's statements under oath, in open court, during his plea allocution, must also be lies. Weinstein affirmed during his allocution that he had provided the answers in the Plea Application, and that the Plea Application was accurate in all respects. (See id. at 8:5-9:11.) Weinstein affirmed that he knew he would be bound by the terms of his plea agreement, and that he would not be able to "change your mind and take back any of the terms that appear in this plea agreement?" (Id. at 10:13-20.) And Weinstein affirmed it was his decision to waive his right to trial – and that no one – not the Court, not the Government, not his lawyers, "forced" him "in any way in connection with this decision," that no one made "any inducements" to him "to waive [his] right to trial, other than what appears in the plea agreement," and that he was "comfortable" with his decision, "after thinking about it and having enough time to speak to [his] lawyers, members of [his] family and anybody else who [wa]s important" to him. (Id. at 14:1-12.)

On similar records, Courts have repeatedly found pleas to be "completely voluntary and knowing," because "[d]uring his plea, [the defendant] was explicitly asked by the district court judge whether anyone forced him to accept

this arrangement, to which he responded no." United States v. Torres, 129 F.3d 710, 715-16 (2d Cir. 1997).  Again, this is because "statements at a plea allocution carry a strong presumption of veracity."  Id.; see also United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (concluding that the district court was entitled to rely upon defendant's sworn statements, made in open court in rejecting defendant's request to withdraw plea); United States v. Dowe, 41 F. App'x 561, 2002 WL 1723864, at *1 (3d Cir. July 25, 2002) (unpublished) (holding that defendant's prior, sworn statements that he was satisfied with his legal representation cast into doubt his later, self-serving assertions of ineffective assistance).

      There are reasons for each of the procedures that comprise the guilty plea process.  The first event at any guilty plea hearing, including Weinstein's, is to place the defendant under oath.  There is a reason:  the defendant's statements at the hearing are critical, and are presumed to be true, and the oath memorializes their solemnity.  The defendant is required to complete the Plea Application, and certify that the answers are true, and sign it directly below the statement that reads "I hereby certify that the foregoing information and statements herein are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."  There is a reason:  the defendant is waiving fundamental rights, and this waiver is not taken lightly.  As an additional prophylactic, the defendant's attorney must certify that the statements in the Plea Application, including that "no one has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I will receive a lighter sentence, or probation, or any other form of leniency if I plead GUILTY," are true.  There is a reason:  the attorney serves to protect the defendant's rights, and must not participate in a deprivation of those rights.

      Make no mistake:  Weinstein's motion puts the certification of Mr. Cleary – one of the most prominent lawyers in the nation and a two-time United States Attorney – directly at issue.  For, according to Weinstein's "declaration," it was Mr. Cleary who had the critical conversations with the Court, where the Court made supposedly improper comments.  If what Weinstein is saying now, as part of his motion, is true, then one would have to believe that Mr. Cleary was mistaken in January 2013.  Either Weinstein is correct now, or Mr. Cleary was correct then.  It cannot be both.

### 2. Weinstein's Declaration Should Not Be Believed Because It Contains Demonstrably False Statements

      There is simply nothing in the record to indicate that Weinstein is telling the truth in his declaration.  But there is much evidence that he is lying.  Weinstein's declaration is quite short – just fourteen paragraphs.  It is this

Court's task to determine whether the statements in that declaration are true. The Government does not, of course, have direct knowledge of the conversations that are alleged to have occurred between the Court and Weinstein's lawyers. But within the four corners of the declaration are demonstrably false statements:

- Weinstein declares that "I was arrested on August 20, 2010 . . . ." (Dkt. No. 125 ¶ 3.)  This is false.  He was arrested on August 12, 2010.

- Weinstein declares that "[i]n late November 2012, I received a proposed plea agreement from the government that would provide for a sentence between 5 and 10 years imprisonment."  (Id. ¶ 4.)  This is false.  The Government conveyed the November 2012 Plea Offer on November 6, 2012, not in "late November."

- Weinstein declares that "I accepted the plea offer . . . ."  (Id.)  This is false.  Weinstein sent to the Government a plea agreement that pled to different counts than were offered and different restitution amounts than were offered – Weinstein never accepted the Government's offer.

- Weinstein declares that "the government rejected my acceptance of the plea agreement on the grounds that my acceptance was untimely because the government asserted that it was submitted **one day after** the government's deadline for responding to the plea offer."  (Id. ¶ 5 (emphasis added).)  This is false.  The Government made no such statement.  The November 2012 Plea Offer expired, by its terms, on November 9, 2012.  Weinstein's lawyers knew this, and when Weinstein did not sign on November 9, 2012, they asked for an extension until November 12, 2012.  At the end of the day on November 12, 2012, Weinstein's lawyers acknowledged that the offer expired on November 12, 2012, and stated that they did not have a signed plea from Weinstein.  In fact, Weinstein signed his version of the November 2012 Plea Offer on December 4, 2012, and it was transmitted to the Government on December 5, 2012 – not "one day," but **twenty-two days** after the "government's deadline for responding to the plea offer."

Again, the Government does not know anything about the supposed statements made by the Court to Weinstein's lawyers, or the supposed statements made by Weinstein's lawyers to Weinstein.  But the Government can prove that within just fourteen paragraphs, Weinstein managed to make

several false statements.  *Falsus in uno falsus in omnibus* is an old saying, but it applies here.

> *3. Weinstein's Declaration is Unreliable and Insufficient Because it Does Not Contain a Single Statement Actually Made by This Court, and Because Weinstein Has Not Come Forth With Any Evidence From Anyone With First-Hand Knowledge of Any Statements Made by This Court*

There is a critical distinction between Weinstein's motion and nearly all other cases that seek to withdraw a plea based upon supposed judicial interference in the plea process, including those cited in his motion:  Weinstein has not come forth with a single word, on the record, that supports his claim.  Instead, he relies solely on double hearsay statements.  In each instance cited in his declaration, he claims that the Court made statements to his lawyers, who then made statements to Weinstein.

But Weinstein does not provide one word from any of his lawyers in support of his motion.  Indeed, the only statements in the record come from Mr. Cleary, and stand in opposition to the position now taken by Weinstein.  There is therefore nothing in the record of anyone with first-hand knowledge of the purported Rule 11 violations that supports Weinstein's claims.  That omission distinguishes this case from United States v. Hawthorne, 502 F.2d 1183 (3d Cir. 1974).

In Hawthorne, the pro se defendant wrote to the District Court one month after he pled guilty to selling cocaine, and claimed that his plea was motivated by his attorney's promise that if the defendant pled, the defendant would receive only a five year sentence.  The District Court denied Hawthorne's motion to withdraw his plea without a hearing, and sentenced Hawthorne to 10 years' imprisonment.

Hawthorne appealed.  The Court of Appeals first distinguished between two types of situations:  on the one hand, cases in which defense counsel told the defendant that, essentially, a deal had been struck, and the defendant would receive a specific sentence; and on the other hand, cases in which defense counsel made "mere predictions of the future actions of the judge."  Id. at 1187.  In the former category, the defendant would be entitled to a hearing on his withdrawal motion, while in the latter, the defendant would not be entitled to a hearing.

The Hawthorne court also stressed, though, that "to ferret for the substance of Hawthorne's assertions concerning counsel would appear fruitless, for Hawthorne's [pro se] allegations are 'inartfully pleaded.'" Id. at

1188. Therefore, the Circuit stated, "[w]e should . . . not hold Hawthorne to the same standards that would be applied to a defendant who, at the time he petitions a court for relief, is adequately represented by counsel." Id. Accordingly, the Circuit limited its holding to the "peculiar circumstances of this case." Id. Here, of course, Weinstein is the opposite of a pro se litigant – he is on his eighth lawyer. His pleadings, though factually deficient, are certainly artful.

Moreover, Hawthorne was decided in 1974 – a different era in plea hearings. There does not, from the opinion, seem to have been a certified Plea Application in that case, or a certification from counsel. Here, because those documents exist, the record is more developed, and Weinstein's state of mind when entering his plea is more easily divined from the record.

### 4. *Weinstein's Motion to Withdraw His Plea is Extraordinarily Late, And This Makes it Less Believable*

Weinstein waited 314 days to file his motion to withdraw. Numerous courts have held that far shorter periods of delay make plea withdrawal motions less believable. As the First Circuit put it,

> Because the timing of a defendant's attempted plea withdrawal is highly probative of motive, close scrutiny of the chronology is important in adjudicating whether retraction is fair and just. While an immediate change of heart may well lend considerable force to a plea withdrawal request, a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses. Put another way, excessive delay saps strength from any proffered reason for withdrawal.

United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992).

As far back as 1975, the D.C. Circuit recognized that "if the defendant has long delayed his withdrawal motion, and has had the full benefit of competent counsel at all times, the reasons given to support withdrawal must have considerably more force than if he had made a motion immediately after the plea." United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975). This is exactly the case here.

A panoply of courts have held that delays far shorter than Weinstein's were too long. For example, in United States v. Torres, the Second Circuit described a motion to withdraw a guilty plea made seven months after the plea hearing to be "extreme delay," and used that as one factor to affirm the denial of the motion without an evidentiary hearing. 129 F.3d at 716. In United

States v. Durham, the Sixth Circuit held that "[t]he strongest factor supporting the district court's denial of Durham's motion [to withdraw his plea] is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea. This Court has denied motions to withdraw based on even shorter gaps of time." 178 F.3d 796, 798-99 (6th Cir. 1999) (citing United States v. Baez, 87 F.3d 805, 807 (6th Cir. 1996) (sixty-seven-day delay was strongest factor supporting denial of motion to withdraw) and United States v. Goldberg, 862 F.2d 101, 104 (6th Cir. 1988) (describing fifty-five-day gap as a "lengthy delay")). See also, e.g., United States v. Martin, 668 F.3d 787, 795-97 (6th Cir. 2012) (affirming denial of withdrawal motion in part because defendant filed motion 95 days after plea); United States v. Brehm, 442 F.3d 1291, 1298-99 (11th Cir. 2006) (affirming denial of motion to withdraw plea in part because government would be prejudiced by 9 month delay before filing motion); United States v. Grant, 117 F.3d 788, 790 (5th Cir. 1997) (affirming denial of motion to withdraw guilty plea made three months after guilty plea to tax evasion offense).

Weinstein has pointed to no good reason why he took more than eleven months to "remember" the purportedly improper statements made by this Court to his lawyers. As stated in Doyle, the "timing of a defendant's attempted plea withdrawal is highly probative of motive." 981 F.2d at 595. Here, Weinstein's motive is clear: more delay, more obfuscation. Weinstein is less than a month from sentencing, and is trying to put off the inevitable. In fact, he is trying to do to this Court what he did to his victims during the course of his schemes: say one thing, do another, and constantly change agreed-upon terms. The Court should not indulge this type of gamesmanship.

### D. Weinstein is Not Entitled to a Hearing Because His Motion Does Not Raise Sufficient Issues Regarding the Voluntariness of His Plea

The Court of Appeals has held that "[t]he district court retains a great deal of discretion to deny a withdrawal motion. A simple shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to force the government to incur the expense, difficulty and risk of trying a defendant, who has already acknowledged his guilt before the court." Jones, 979 F.2d at 318. This discretion includes the discretion to deny a withdrawal motion without a hearing: "The defendant is not entitled to an evidentiary hearing or the withdrawal of her plea as a matter of right; both are within the wide discretion of the district court." United States v. Woods, 554 F.3d 611, 613 (6th Cir. 2009). "A district court need hold an evidentiary hearing on a plea withdrawal only where the defendant offers substantial evidence that impugns the validity of the plea." United States v. Robinson, 587 F.3d 1122, 1132 (D.C. Cir. 2009) (internal quotation marks and citations omitted).

Numerous courts have denied evidentiary hearings in cases like this. For example, in United States v. Pulido, 566 F.3d 52 (1st Cir. 2009), the First Circuit affirmed the denial motion to withdraw a guilty plea without an evidentiary hearing. No hearing was necessary because the defendant's allegations in his motion were contradicted by his statements under oath during his guilty plea colloquy. See also United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009) (affirming denial of withdrawal motion without a hearing where defendant had not established a fair and just reason to withdraw his plea); United States v. Jones, 381 F.3d 615 (7th Cir. 2004) (affirming denial of plea withdrawal motion without an evidentiary hearing).

Likewise, in United States v. Patterson, 576 F.3d 431, 437 (7th Cir. 2009), the defendant's proffered reasons for withdrawing his guilty plea contradicted his sworn statements at the plea colloquy, and the defendant never alleged that he would have presented additional evidence even if a hearing were held. The Seventh Circuit held that the district court did not abuse its discretion in denying the motion to withdraw the plea without holding a hearing.

Similarly, in United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992), the Second Circuit held that "the defendant must present some significant questions concerning the voluntariness or general validity of the plea to justify an evidentiary hearing. No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory."[4]

---

[4] See also, e.g., United States v. Torres, 129 F.3d 710, 716 (2d Cir. 1997) (affirming the district court's denial, without an evidentiary hearing, of the defendant's motion to withdraw his guilty plea on the grounds that he was coerced by his attorney into pleading guilty and that his attorney was ineffective, holding that where defendant supported motion to withdraw his guilty plea only with allegations that merely contradicted record of clear and knowing plea allocution, evidentiary hearing was not required prior to denying the motion); United States v. Maher, 108 F.3d 1513, 1529 (2d Cir. 1997) (no hearing is required if the defendant's allegations merely contradict his earlier statements made under oath at his plea allocation); United States v. Winston, 34 F.3d 574, 577-78 (7th Cir. 1994) (affirming the district court's refusal to hold an evidentiary hearing to determine whether the defendant had a "fair and just reason" to withdraw his guilty plea, despite the defendant's allegation that his counsel had not apprised him of relevant discovery material which the government had turned over prior to trial, where the defendant indicated at his plea colloquy that he was entering the plea in an informed and voluntary

Weinstein's motion follows the pattern of the cases where hearings were denied.  The allegations in his declaration are belied by his own, repeated, statements in the record.  Weinstein's motion alleges that he was pressured into pleading guilty, but his allocution, and his Plea Application, directly contradict the claim in his motion.  Moreover, he has not alleged any direct evidence of this Court's purported improper communications.  Tellingly, he does not even claim to have an affidavit, declaration or certification from any of his lawyers.  Indeed, he has not requested an evidentiary hearing.  And he does not deserve one.

For all these reasons, Weinstein's allegations, eleven months after his plea, of improper conduct by this Court cannot be trusted.  Sentencing is mere weeks away, and the parties have better ways to spend their time.

        Respectfully submitted,

        PAUL J. FISHMAN
        United States Attorney

        s/Zach Intrater

BY:   RACHAEL A. HONIG
       GURBIR S. GREWAL
       ZACH INTRATER
       Assistant United States Attorneys

---

manner; and where, alternatively, even assuming the truth of the defendant's allegations, such allegations were merely conclusory and failed to constitute grounds for withdrawal of the plea).