1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CRIMINAL NO. 11-701

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| -vs- | : | TRANSCRIPT OF PROCEEDING |
| | : | |
| ELIYAHU WEINSTEIN, | : | PLEA |
| | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - -

Trenton, New Jersey
January 3, 2012

B E F O R E :


THE HONORABLE JOEL A. PISANO
UNITED STATES DISTRICT COURT JUDGE


A P P E A R A N C E S :


PAUL J. FISHMAN, U.S. ATTORNEY
By:  **GURBIR SINGH GREWAL, Assistant U.S. Attorney**
     **RACHAEL HONIG, Assistant U.S. Attorney**
     **ZACH INTRATER, Assistant U.S. Attorney**
**For the Government.**


KROVATIN KLINGEMAN LLC
BY:  HENRY E. KLINGEMAN, ESQ.,
For the Defendant.


**Pursuant to Section 753 Title 28 United States
Code, the following transcript is certified to be
an accurate record as taken stenographically in the
above-entitled proceedings.**


———————————————
**S/Joanne M. Caruso, CSR, CRR**
**Official Court Reporter**
**(908)334-2472**

**APPEARANCES CONTINUED:**

**PROSKAUER ROSE**
**BY:  ROBERT J. CLEARY, ESQ.**
**     MARK D. HARRIS, ESQ.,**
**For the Defendant.**

1                        January 3, 2013

2            THE COURT:  Mr. Weinstein, good afternoon.

3        Counsel, please enter your appearances.

4            MR. INTRATER:  Good afternoon.

5            Zach Intrater for the Government.

6            MR. GREWAL:  Gurbir Grewal for the United States.

7            MS. HONIG:  Good afternoon.

8            Rachael Honig for the Government.

9            MR. CLEARY:  Robert Cleary for Mr. Weinstein.

10           MR. HARRIS:  Mark Harris for Mr. Weinstein.

11           MR. KLINGEMAN:  Henry Klingeman for Mr. Weinstein who

12   is standing two seats from my left.

13           I would also like to acknowledge the presence of Mr.

14   Weinstein's wife as well as friends and other members of his

15   community.

16           THE COURT:  All right.

17           Mr. Weinstein, as you know, we had scheduled the

18   trial of this indictment to start on Monday and there has been

19   communication made to me through counsel that you intend to

20   plead guilty to two counts of this indictment.  Is that

21   correct?

22           THE DEFENDANT:  Yes.

23           THE COURT:  We're going to place you under oath and I

24   have some questions for you.

25           E L I Y A H U   W E I N S T E I N, affirmed.

```
 1              BY THE COURT:
 2   Q    Mr. Weinstein, I'm going to ask you some questions about
 3   your waiver of your right to trial and some other
 4   constitutional rights.  I'm going to ask you some questions
 5   about your decision to plead guilty and then we'll ask you
 6   some questions about the case.
 7              Please understand that you are under oath and that
 8   means that if you give any statement here in court that you
 9   know to be false, you can be prosecuted for perjury.  I don't
10   expect you'll give me any false statements, but I don't want
11   you to say something that turns out to be incorrect because
12   you don't understand the question, okay?
13   A    Yes.
14   Q    If you need clarification of any of my questions, please
15   let me know.  If you need a moment to speak to your lawyers,
16   I'll give you that chance as well.
17   A    Thank you.
18   Q    Okay?
19   A    Yes.
20   Q    How old are you?
21   A    Thirty-seven.
22   Q    Keep your voice up.
23   A    Thirty-seven.
24   Q    Where do you live?
25   A    I live in Lakewood, New Jersey.
```

1  Q    How long have you lived in Lakewood?

2  A    I would say about 13 years now.

3  Q    Thirteen years.

4       Where did you grow up?

5  A    In Brooklyn.

6  Q    Where were you born?

7  A    In Brooklyn.

8  Q    How much education have you had?

9  A    Religious education, post high school.

10 Q    So I take it you can read and you can understand all of

11 the documents you've seen in connection with the case?

12 A    Yes.

13 Q    Are you presently seeing any doctors on a regular basis?

14 A    No.

15 Q    Are you taking any medication regularly?

16 A    I take Crestor for cholesterol.

17 Q    Anything else?

18 A    No.

19 Q    Have you taken any substance in the past couple of days

20 that would affect your ability to understand what you're doing

21 here today?

22 A    No.

23 Q    Have you seen any psychologists or psychiatrists?

24 A    No.

25 Q    Your attorneys are with you here today.

1          I take it you have spent sometime with them discussing

2   this case?

3   A     I have.

4   Q     Now, Mr. Klingeman I know has been representing you for

5   quite sometime because he's been in court for more than a year

6   every time we've had a proceeding in your case, so I know that

7   you've known him for awhile.

8          How long do you know Mr. Cleary and Mr. Harris?

9   A     I know them for about two and a half years now.

10  Q     They have been representing you in connection with any of

11  the matters related to this case?

12  A     Just in connection with the criminal matter.

13  Q     All right.

14         So you know them through other means, but their

15  appearance in this case has become only recent.  Is that

16  correct?

17              MR. CLEARY:  Perhaps I can explain.

18              THE COURT:  Please.

19              MR. CLEARY:  We had initially represented Mr.

20  Weinstein at the time of his arrest and for a period of time

21  thereafter.  Then we were not representing him for a period of

22  time and recently have reentered the case.  We have known him

23  for that entire period as a consequence.

24  Q     I ask the questions the way I did because I remember

25  seeing your name and the name of your firm and Mr. Harris in

1  some documents in connection with this.

2       Mr. Weinstein, suffice it to say, that you're very

3  familiar with Mr. Cleary and Mr. Harris and Mr. Klingeman,

4  correct?

5  A    I am, yes.

6  Q    Now, in connection with this proceeding, in connection

7  with your decision to plead guilty, have they spent time with

8  you discussing this?

9  A    Yes.

10  Q    In preparation for trial and in preparation for today's

11  proceeding, have they gone over with you any information about

12  the case that they've learned from the United States Attorney?

13  A    They have.

14  Q    In the past several months, have all of your attorneys

15  made themselves available to you?

16  A    My attorneys here have always been available to me.

17  Q    So if you wanted to speak to them and you called them,

18  would they return your phone calls?

19  A    Yes.

20  Q    If you wanted to have a meeting, would they agree to have

21  a meeting with you?

22  A    Yes.

23  Q    Have they answered all of your questions?

24  A    They have.

25  Q    Have they given you legal advice?

1  A    Yes.

2  Q    And are you satisfied with the legal services that you've

3  received from Mr. Klingeman, Mr. Cleary, Mr. Harris?

4  A    I am.

5           THE COURT:  Is there a Rule 11 Form there?

6           MR. CLEARY:  There is, your Honor.  We signed it.

7  Q    Mr. Weinstein, that document in front of you there is

8  something that we call a Rule 11 Form because it contains all

9  of the information that our Federal Criminal Practice Rules

10 requires you to have.  It's actually called a Request For

11 Permission to Plead Guilty.

12          It has about 45 questions on it and I ask you if you

13 went over all of those questions with your lawyers?

14 A    I skimmed through them, yes.

15 Q    When did you do that?

16 A    I looked at it last night real quick and I looked at it

17 this morning again.

18 Q    Did you go over it with your lawyers?

19 A    That's fair to say, yes.

20 Q    All of these questions are in writing there and it

21 requires there to be written answers.

22          Did you provide the answers to each of those questions?

23 A    I did not actually fill it out.

24 Q    I'm asking you did you provide the answers?

25 A    Yes.

1    Q    Who wrote the answers onto the form?

2    A    Mr. Harris.

3    Q    Mr. Harris did.

4         After he wrote down your answers, did you read what he

5    wrote to make sure he got it all right?

6    A    I skimmed through it.

7    Q    Do you have any reason to think that anything written on

8    the document is inconsistent with what you said?

9    A    No.

10   Q    And did you then sign the document?

11   A    I did.

12        THE COURT:  Mr. Harris, Mr. Cleary, Mr. Klingeman,

13   you represent that Mr. Weinstein gave all of the answers that

14   appear on the Rule 11 Form and that he signed it voluntarily?

15        MR. CLEARY:  Yes, your Honor.

16        MR. HARRIS:  Yes, your Honor.

17   Q    Now, Mr. Weinstein, there's another document here that's

18   very important.  It's called a plea agreement.  It comes in

19   the form of a letter written to Mr. Cleary dated January 3rd,

20   which is today.

21        Do you have a copy of that in front of you?

22   A    I do, your Honor.

23   Q    The letter is signed by Mr. Grewal over the signature

24   line of Miss Honig and Mr. Intrater and it's approved by their

25   supervisor.

1     Do you have a copy of this plea agreement in front of

2  you?

3  A     Yes, your Honor.

4  Q     Now, do you understand that although the plea agreement

5  comes in the form of a letter, this is, nevertheless, going to

6  be considered as a binding agreement between you and the

7  United States Attorney?

8  A     I do.

9  Q     And it tells me how you have agreed to resolve all of the

10  criminal charges against you in this case.

11     Do you understand that?

12  A     Yes.

13  Q     Do you understand that if I accept your plea today, you

14  are going to be bound by all of the terms that appear in this

15  plea agreement and so will the United States Attorney?

16  A     I do.

17  Q     And do you realize that you're not going to be able to

18  change your mind and take back any of the terms that appear in

19  this plea agreement?

20  A     I do.

21  Q     Now, did you sign the plea agreement?

22  A     I believe so, yes.

23  Q     What do you mean you "believe so"?

24  A     I don't have it in front of me.

25     THE COURT:  Who's got one that's signed?

1  A    Yes, I have it.

2  Q    Now, before you signed this plea agreement, Mr.

3  Weinstein, did you read it?

4  A    I did.

5  Q    Did you read it carefully and did you go over it with

6  your lawyers?

7  A    Yes.

8  Q    Did you have enough time to ask any questions about this

9  plea agreement that you may have had?

10 A    Yes.

11 Q    Do you understand it?

12 A    I do.

13 Q    And do you agree to be bound by all of its terms?

14 A    Yes.

15      THE COURT:  Mr. Cleary, you represent that Mr.

16 Weinstein gave all of the answers -- that Mr. Weinstein

17 indicated his understanding and acceptance of the plea

18 agreement and that he signed it voluntarily?

19      MR. CLEARY:  I do, your Honor.

20 Q    Okay, Mr. Weinstein.

21      This is what this agreement tells me:  It tells me a

22 number of things about your agreement to resolve this

23 indictment.  It tells me that you're going to enter a plea of

24 guilty to count one in the indictment, which charges you with

25 a wire fraud conspiracy and count 36 of the indictment that

1  charges you with money laundering.  Is that correct?

2  A    Yes.

3  Q    It also tells me that if I accept your plea and if you

4  are ultimately sentenced for these convictions, then the

5  Government will agree to dismiss the balance of the charges

6  that appear in this indictment.

7  A    Yes.

8  Q    Do you realize, however, that if, for any reason, this

9  plea does not go through and you're ultimately not sentenced

10  on these charges, then, of course, the indictment in its

11  entirety can be reinstated and trial against you commenced?

12  A    Yes.

13  Q    It also is the case that were that to occur, you have

14  agreed that you will not plead any applicable statute of

15  limitation as a defense.

16  A    Yes.

17  Q    So, essentially, the deal is that you're going to plead

18  guilty to a wire fraud conspiracy and money laundering and the

19  Government agrees, after sentencing, to dismiss the balance of

20  the charges against you.

21  A    I understand that.

22  Q    There's also an agreement which relates to the potential

23  sentence that you might receive but we'll be getting to that

24  in a minute, right?

25  A    Yup.

1  Q    Now, before we go any further, do you understand that you

2  do not have any obligation to plead guilty?

3  A    Yes.

4  Q    As a matter of fact, as you know, we're planning -- we

5  were planning to start your trial on Monday, but do you

6  realize and understand that you have the right to a jury trial

7  on all of these charges in the indictment?

8  A    I do.

9  Q    And if you decided to go to trial, the jury would be

10 sworn here in the courtroom; it would be the burden of the

11 Government to prove the charges against you beyond reasonable

12 doubt to a unanimous jury; you would have the right, through

13 your lawyer, to challenge any of the evidence introduced and

14 to confront any witness who testified; you would also have the

15 right to use subpoenas in order to compel any defense witness

16 you might know of to come into court and testify in your

17 behalf; and you would have the right to testify in your own

18 defense as well; on the other hand, you would also have the

19 right not to testify and if you decided to remain silent at

20 your trial, the jury would be instructed that they could not

21 hold that decision against you.

22      Do you know about these rights?

23 A    I do.

24 Q    And is it your decision to waive your right to trial?

25 A    Yes, it is.

1  Q    Now, has anybody forced you in any way in connection with

2  this decision?

3  A    No.

4  Q    Anybody make any inducements to you to waive your right

5  to trial, other than what appears in the plea agreement?

6  A    No.

7  Q    Are you comfortable with your decision?

8  A    Yes.

9  Q    And is this a decision you have made after thinking about

10  it and having enough time to speak to your lawyers, members of

11  your family and anybody else who is important to you?

12  A    Yes.

13  Q    Do you understand that if I accept your plea, you're

14  going to face a sentence?

15  A    I do.

16  Q    And do you realize that the sentence that I impose upon

17  you is going to be entirely within my discretion?

18  A    I do.

19  Q    I'm going to advise you of the maximum penalties that you

20  face and then we'll be going, in a couple of minutes, over the

21  agreement that you made with the Government that might affect

22  the ultimate sentence you receive, but I want to advise you

23  that in connection with count one, wire fraud conspiracy, you

24  face a maximum term in jail of up to 20 years and a fine of up

25  to twice the amount of money that anybody made as a result of

1    your criminal conduct.

2             Are you aware of that?

3    A    I am.

4    Q    And as to count 36, money laundering, do you understand

5    that you face a maximum sentence of up to ten years in jail

6    and, again, a fine of up to twice the amount of money that

7    anybody made as a result of your criminal activity?

8    A    Yes.

9    Q    Do you also understand that I may impose these sentences

10   to run either consecutively or concurrently?  That is to say

11   it's within my discretion to have you serve both of these

12   sentences at the same time or to have you serve the sentence

13   on count one followed by the sentence on count 36, that's up

14   to me?

15   A    Yeah, I know.

16   Q    Do you also understand you'll have to pay a special

17   assessment of $100 per count; when you are released from

18   custody, you'll have to serve a term of supervised release

19   which is like being on probation for up to three years; after

20   the termination -- excuse me.  Should you violate any

21   condition of that supervised release, you can be returned to

22   custody for up to another two years.

23             Are you aware of that?

24   A    I am.

25   Q    Do you also understand in federal court there is no

1  parole and you have to serve pretty much all the time you get?

2  A    Yes.

3  Q    Okay.

4       Now, in connection with your sentence, this plea

5  agreement tells me that you and the Government have agreed

6  that your sentence will be somewhere between no jail time and

7  300 months of jail time.

8  A    I do understand that.

9  Q    That's 25 years.

10      So if I accept your plea agreement, do you understand

11  that you will be sentenced to somewhere up to and including 25

12  years in jail?

13  A    Yes.

14  Q    Do you understand that where within that range, where

15  within zero to 300 months you're sentenced, will be up to me?

16  A    I do.

17  Q    Now, have your lawyers explained to you how a sentencing

18  proceeding in federal court will go?

19      Do you have a basic understanding of what's going to

20  happen on your sentencing date?

21  A    We've talked about it, yeah.

22  Q    Let me go through it with you so you understand.

23      The first thing I'm going to do -- there's three steps

24  to it.  The first thing I'm going to do is to consider the

25  analysis provided in what we call the guidelines, the

1    sentencing guidelines.

2            I'm sure your lawyer has shown you a book that looks

3    something like this.  It might not have the same color cover

4    but it looks like this.  On the back of it has a chart with a

5    period of time.

6    A       Yes.

7    Q       The guidelines are something that I have to consider and

8    both the Government is going to urge a guidelines analysis on

9    me, your lawyers will urge a guidelines analysis upon me,

10   probation department will make a guidelines analysis and I'll

11   do one on my own, okay?

12   A       Okay.

13   Q       The guidelines analysis is going to take into account the

14   facts and circumstances of your case, the role that you played

15   in connection with the criminal conduct, how much money was

16   involved or lost by any victims, whether you have any prior

17   criminal record and anything else that comes under the

18   guidelines analysis.  That will give me a range of time within

19   which your sentence might fall, what we call that the advisory

20   guidelines range.  I'm not bound to go along with it, but I

21   can.

22           I also have the discretion to sentence you above or

23   below that guidelines range by doing something that we call a

24   departure and lastly, the third phase will be for me to

25   consider anything else I need to know about the case and

1 anything else I need to know about you in order to arrive at

2 what I think is a reasonable sentence.

3          MR. CLEARY:  Excuse me, one second, your Honor.

4          (Discussion held off the record.)

5 A    Yes, I understand that.

6 Q    Do you understand that there's been no agreement between

7 you and the Government as to what the guidelines analysis will

8 provide?

9 A    Yes.

10 Q    You've also agreed in this plea agreement that you're

11 going to make full restitution to victims of your crime and

12 certain forfeitures of property to the Government?

13 A    Yes.

14 Q    Now, in connection with the forfeiture, you've agreed to

15 forfeit to the Government the amount of $2 million in money or

16 property, including all of the property that's set forth in

17 Schedule B to your plea agreement.  And if you take a look at

18 the back of your plea agreement, you'll see that there are a

19 number of pages that have Schedule B written across the top.

20          This appears to include a list of jewelry, balances in

21 some bank accounts, various art objects and religious

22 artifacts and a number of other pieces of personal property.

23 I don't know what the value that's set forth on these pages is

24 accurate or not, but in any event, you've agreed to forfeit

25 everything that appears on Schedule B and otherwise up to $2

1 million.

2   Is that your understanding?

3 A Yes, it is my understanding.

4 Q In addition to that, you are going make restitution to

5 the victims of your offense and there may be a need to have a

6 hearing on how much the restitution will be and who is

7 entitled to it.

8   MR. CLEARY:  Excuse me one second, your Honor.

9   (Discussion held off the record.)

10 A I understand that, your Honor.

11 Q Now, with respect to the forfeiture, you are also

12 agreeing that you're going to sign any judgments, legal

13 documents or other papers necessary to actually effect the

14 forfeiture of your property and money to the Government and

15 you've also agreed that you will not challenge in any way the

16 right of the Government to obtain property by way of a

17 forfeiture.

18   In connection with the restitution, you have agreed

19 that you will make a full accounting to the United States

20 Attorney of all monies paid to or received by you from any of

21 your criminal conduct and in connection with that accounting

22 of funds, you have agreed to sit for a deposition under oath

23 and to provide all truthful information regarding your

24 conduct.

25 A I have.

1    Q    Lastly, in connection with that restitution, you are

2    going to be able to argue at your sentence that any

3    restitution payments, forfeiture payments that you have made

4    prior to sentencing may be considered by me in connection with

5    acceptance of responsibility.

6    A    Yes.

7    Q    On the other hand, you are also agreeing, conversely,

8    that merely because you submit to a deposition, you will not

9    argue that that deposition itself constitutes an acceptance of

10   responsibility.

11            MR. CLEARY:  Excuse me one second, your Honor.

12            (Discussion held off the record.)

13   A    I understand, your Honor.

14   Q    Now, you are an American citizen, I take it?

15   A    I am.

16   Q    Lastly, do you realize that this plea agreement is

17   binding upon you and it's binding upon the United States

18   Attorney but it does not bind any other Government agency, nor

19   does it prevent anyone from bringing civil lawsuits against

20   you?

21            MR. CLEARY:  Excuse me one second, your Honor.

22            (Discussion held off the record.)

23   A    Yes, I do understand.

24   Q    Okay.

25            Now, in connection with the case, on page eight of the

1  plea agreement, you are stipulating with the United States

2  Attorney as follows:  That between June of '04 and August of

3  2010, you knowingly and intentionally devised and participated

4  in an investment fraud scheme as described in the indictment.

5       You've also stipulated that as part of the fraud

6  scheme, you obtained money and property by means of materially

7  false and fraudulent pretenses, representations and promises.

8       You further are stipulating that in advancing,

9  furthering or carrying out the fraud scheme, you transmitted

10  writings, signals or sounds by means of wire, radio or

11  television communication in interstate commerce or caused the

12  transmission of writing, signals or sounds by means of a wire,

13  radio or television communication in interstate commerce.

14       You are further stipulating that you knowingly engaged

15  in monetary transactions knowing that they involved property

16  derived criminally from wire fraud of a value greater than

17  $10,000.

18       You make all of those stipulations as though proven

19  beyond a reasonable doubt?

20  A    I understand.

21  Q    Yes?

22  A    Yes.

23  Q    Now, in connection with the guidelines analysis that we

24  just spoke about a few minutes ago, there are considerations

25  which could result in a benefit to you.

1          The total guidelines offense level can be reduced if I

2    find that you have accepted full responsibility for your

3    criminal conduct and if I find that you have come forward and

4    provided to the Government all information that you have about

5    your offense and that you decided in a timely fashion to plead

6    guilty.  If that is the case, if, indeed, you do sit for a

7    deposition and the Government represents to me that in their

8    view you have come forward and provided truthful information,

9    you have accepted responsibility and you have timely decided

10   to plead guilty, then the Government stipulates that I should

11   make a three-level downward reduction in your total guidelines

12   offense level.

13          Is that your understanding?

14   A    Yes.

15   Q    Lastly, both you and the United States Government

16   stipulate that a sentence of somewhere between zero to 300

17   months imprisonment, along with a period of not more than

18   three years of supervised release, along with full restitution

19   and forfeiture to the victims of the offense and to the

20   Government, as well as a full accounting under penalty of

21   perjury, of all monies paid to you from any source during the

22   period covered by the indictment, would be a reasonable

23   sentence and neither party will argue for a sentence above or

24   below zero to 300 months.

25          Is that your understanding?

1    A    Yes.

2    Q    Do you agree to be bound by all of these stipulations?

3    A    I do.

4    Q    Okay.

5         Mr. Weinstein, between June of 2004 and August of 2010,

6    did you agree with some other people to solicit money from

7    investors for real estate projects?

8    A    Yes.

9    Q    In order to induce investors to give you money, did other

10   people acting at your direction falsely tell investors that

11   their money would be used to purchase specific pieces of real

12   estate often at the below market prices?

13   A    Yes.

14   Q    In order to induce those investors to give you money, did

15   other people acting at your direction also falsely tell the

16   investors that you already had buyers lined up to whom you

17   could flip or resell these pieces of real estate at a profit?

18   A    Yes.

19   Q    At the time you made or caused other people to make these

20   representations, did you know they were false?

21        MR. CLEARY:  The parties have amended that question

22   by agreement and it should read now with the Court's

23   permission, at the time you caused others to make these

24   representations, did you know that they were false, to make it

25   consistent with questions two and three.

1  Q    Do you understand the question?

2  A    I do.

3  Q    What's the answer?

4  A    The answer is yes.

5  Q    As a result of, and in reliance upon these false

6  representations among others, did these investors wire money

7  from accounts located outside of New Jersey into accounts that

8  you controlled within New Jersey?

9  A    Yes.

10  Q    About August 3rd, 2010, did other people acting at your

11  direction knowingly engage in a monetary transaction involving

12  proceeds obtained by wire fraud by causing $450,000 to be

13  wired from an account held in the name of Action Holdings in

14  New Jersey to an account controlled by the victim with

15  initials D. K. in Chicago, Illinois?

16  A    Yes.

17        THE COURT:  Is there any factual inquiry as to count

18  36?

19        MR. INTRATER:  It's included within the questions one

20  through six, your Honor.

21        MR. CLEARY:  Specifically question six, your Honor.

22        THE COURT:  Okay.

23        How is it that that represents a money laundering,

24  Mr. Intrater?

25        MR. INTRATER:  Your Honor, the defendant's pleading

1    guilty to Section 1957 offense which is transacting in the

2    proceeds of a specified unlawful activity.  Specifically here,

3    it's the proceeds of a wire fraud.

4          The parties believe that question number six would

5    adequately satisfy the elements of a Section 1957 offense.

6          THE COURT:  Is there any waiver of appeal?

7          MR. INTRATER:  There is, your Honor.

8          THE COURT:  Where is it?

9          MR. INTRATER:  The waiver of appeal is in the plea

10   agreement at page three continuing onto page four.

11   Q    Mr. Weinstein, on pages -- bottom of page three going

12   onto page four, in your plea agreement, there is a stipulation

13   you're making which says that so long as I do sentence you to

14   somewhere between zero and 300 months, you are going to waive

15   your right to appeal your conviction and sentence and you will

16   not file any challenge or attack to any sentence that I impose

17   upon you.

18          Do you understand that?

19   A    Yes.

20   Q    And is this waiver of your right to appeal or to

21   challenge your sentence also a decision that you've made

22   knowingly and voluntarily, on your own, after you've had

23   enough time to speak to your lawyer?

24   A    Yes.

25          THE COURT:  Any other questions, counsel?

1          MR. INTRATER:  Your Honor, we only have a couple of

2     issues.

3          The first is just to clear up for everyone involved,

4     that the indictment to which the defendant is pleading guilty

5     to is the redacted indictment.  We moved the Court to dismiss

6     certain of those counts, the Court granted that motion so

7     there is only one indictment here, but the defendant is

8     pleading guilty to counts one and 36 of that redacted

9     indictment.

10          Second, your Honor, this is a plea that the parties

11     have entered into pursuant to Rule 11(c)(1)(C).  Therefore,

12     the Court, of course, must accept the terms of the plea

13     agreement as well as the parties having accepted the terms.

14          With respect to restitution and forfeiture, I would

15     just like to highlight for the Court, although the parties

16     have discussed it, on page four of the plea agreement under

17     the caption -- under the heading Forfeiture/Restitution, the

18     second paragraph within that heading states "This office,"

19     meaning the United States Attorney's Office for the District

20     of New Jersey, also reserves the right to seek forfeiture of

21     the full amount ordered by the Court at sentencing to be paid

22     as restitution to the victims of the offense of conviction --

23     offenses of conviction.

24          THE COURT:  What do you mean by that?  If I order

25     restitution to be paid to the victims?

1        MR. INTRATER:  Yes, your Honor.  It's simply that the

2   Government may use the means at its disposal with respect to

3   forfeiture.  In other words, how we can forfeit funds to also

4   use those means to provide restitution to the victims.

5        THE COURT:  So do I have it that it's the United

6   States Attorney's intention that whatever is recovered from

7   Mr. Weinstein be paid over to victims?

8        MR. INTRATER:  That absolutely is our intention, your

9   Honor.

10        THE COURT:  Okay.

11        Anything else?

12        MR. INTRATER:  Finally, your Honor, you did ask the

13   defendant whether or not he was a citizen of the United States

14   and he answered that he was.  Nonetheless, we believe that

15   under *Padilla*, there should also be an inquiry or an

16   advisement that if he is not a citizen of the United States,

17   his conviction could subject him to deportation or removal or

18   is likely to subject him to that.

19   Q    Do you understand that, Mr. Weinstein?

20        If you're not an American citizen, you're likely to be

21   deported after you serve your sentence.

22   A    Yes.

23        THE COURT:  Anything else?

24        MR. INTRATER:  No, your Honor.

25        THE COURT:  Mr. Cleary?

1          MR. CLEARY:  No.

2          THE COURT:  Mr. Klingeman?

3          MR. KLINGEMAN:  No.

4          THE COURT:  Mr. Weinstein, how do you plead to counts

5    one and 36 of the redacted indictment?

6          THE DEFENDANT:  I plead guilty.

7          THE COURT:  Okay.

8          I find that the defendant's made a knowing and

9    voluntary waiver of his right to trial and his other rights.

10   I further find that he has established a fact basis for the

11   plea.

12         I have considered all the terms of the plea agreement

13   between the defendant and the United States Attorney and

14   pursuant to Rule 11(c)(1)(C), the Court accepts the plea under

15   the terms expressed in the agreement and will schedule

16   sentencing.

17         THE CLERK:  April 2, 2013, 10 a.m.

18         THE COURT:  Okay.

19         We'll see you then.

20         What about bail, counsel?

21         MR. INTRATER:  Your Honor, the United States is

22   satisfied with continuing the terms of bail as they are

23   currently.

24         THE COURT:  Any objection?

25         MR. CLEARY:  No, your Honor, thank you.

1          THE COURT:  Okay.

2          (Matter concluded.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$10,000** [1] - 21:17
**$100** [1] - 15:17
**$450,000** [1] - 24:12

**'**

**'04** [1] - 21:2

**1**

**10** [1] - 28:17
**11** [3] - 8:5, 8:8, 9:14
**11(c)(1)(C** [1] - 28:14
**11(c)(1)(C)** [1] - 26:11
**11-701** [1] - 1:2
**13** [1] - 5:2
**1957** [2] - 25:1, 25:5

**2**

**2** [3] - 18:15, 18:25, 28:17
**20** [1] - 14:24
**2004** [1] - 23:5
**2010** [3] - 21:3, 23:5, 24:10
**2012** [1] - 1:8
**2013** [2] - 3:1, 28:17
**25** [2] - 16:9, 16:11
**28** [1] - 1:21

**3**

**3** [2] - 1:8, 3:1
**300** [5] - 16:7, 16:15, 22:16, 22:24, 25:14
**36** [6] - 11:25, 15:4, 15:13, 24:18, 26:8, 28:5
**3rd** [2] - 9:19, 24:10

**4**

**45** [1] - 8:12

**7**

**753** [1] - 1:21

**9**

**908)334-2472** [1] -
1:25

**A**

**a.m** [1] - 28:17
**ability** [1] - 5:20
**able** [2] - 10:17, 20:2
**above-entitled** [1] - 1:22
**absolutely** [1] - 27:8
**accept** [5] - 10:13, 12:3, 14:13, 16:10, 26:12
**acceptance** [3] - 11:17, 20:5, 20:9
**accepted** [3] - 22:2, 22:9, 26:13
**accepts** [1] - 28:14
**account** [3] - 17:13, 24:13, 24:14
**accounting** [3] - 19:19, 19:21, 22:20
**accounts** [3] - 18:21, 24:7
**accurate** [2] - 1:22, 18:24
**acknowledge** [1] - 3:13
**acting** [3] - 23:10, 23:15, 24:10
**Action** [1] - 24:13
**activity** [2] - 15:7, 25:2
**addition** [1] - 19:4
**adequately** [1] - 25:5
**advancing** [1] - 21:8
**advice** [1] - 7:25
**advise** [2] - 14:19, 14:22
**advisement** [1] - 27:16
**advisory** [1] - 17:19
**affect** [2] - 5:20, 14:21
**affirmed** [1] - 3:25
**afternoon** [3] - 3:2, 3:4, 3:7
**agency** [1] - 20:18
**ago** [1] - 21:24
**agree** [5] - 7:20, 11:13, 12:5, 23:2, 23:6
**agreed** [9] - 10:9, 12:14, 16:5, 18:10, 18:14, 18:24, 19:15, 19:18, 19:22
**agreeing** [2] - 19:12, 20:7
**agreement** [30] - 9:18, 10:1, 10:4, 10:6, 10:15, 10:19, 10:21,

11:2, 11:9, 11:18, 11:21, 11:22, 12:22, 14:5, 14:21, 16:5, 16:10, 18:6, 18:10, 18:17, 18:18, 20:16, 21:1, 23:22, 25:10, 25:12, 26:13, 26:16, 28:12, 28:15
**agrees** [1] - 12:19
**amended** [1] - 23:21
**AMERICA** [1] - 1:3
**American** [2] - 20:14, 27:20
**amount** [4] - 14:25, 15:6, 18:15, 26:21
**analysis** [8] - 16:25, 17:8, 17:9, 17:10, 17:13, 17:18, 18:7, 21:23
**answer** [2] - 24:3, 24:4
**answered** [2] - 7:23, 27:14
**answers** [7] - 8:21, 8:22, 8:24, 9:1, 9:4, 9:13, 11:16
**appeal** [4] - 25:6, 25:9, 25:15, 25:20
**appear** [4] - 9:14, 10:14, 10:18, 12:6
**appearance** [1] - 6:15
**APPEARANCES** [1] - 2:1
**appearances** [1] - 3:3
**applicable** [1] - 12:14
**approved** [1] - 9:24
**April** [1] - 28:17
**argue** [3] - 20:2, 20:9, 22:23
**arrest** [1] - 6:20
**arrive** [1] - 18:1
**art** [1] - 18:21
**artifacts** [1] - 18:22
**assessment** [1] - 15:17
**Assistant** [3] - 1:15, 1:15, 1:16
**attack** [1] - 25:16
**ATTORNEY** [1] - 1:14
**Attorney** [10] - 1:15, 1:15, 1:16, 7:12, 10:7, 10:15, 19:20, 20:18, 21:2, 28:13
**Attorney's** [2] - 26:19, 27:6
**attorneys** [3] - 5:25, 7:14, 7:16
**August** [3] - 21:2, 23:5, 24:10
**available** [2] - 7:15, 7:16

**aware** [2] - 15:2, 15:23
**awhile** [1] - 6:7

**B**

**bail** [2] - 28:20, 28:22
**balance** [2] - 12:5, 12:19
**balances** [1] - 18:20
**bank** [1] - 18:21
**basic** [1] - 16:19
**basis** [2] - 5:13, 28:10
**become** [1] - 6:15
**behalf** [1] - 13:17
**below** [3] - 17:23, 22:24, 23:12
**benefit** [1] - 21:25
**between** [8] - 10:6, 16:6, 18:6, 21:2, 22:16, 23:5, 25:14, 28:13
**beyond** [2] - 13:11, 21:19
**bind** [1] - 20:18
**binding** [2] - 10:6, 20:17
**book** [1] - 17:2
**born** [1] - 5:6
**bottom** [1] - 25:11
**bound** [5] - 10:14, 11:13, 17:20, 23:2
**bringing** [1] - 20:19
**Brooklyn** [2] - 5:5, 5:7
**burden** [1] - 13:10
**buyers** [1] - 23:16
**BY** [3] - 1:18, 2:2, 4:1

**C**

**caption** [1] - 26:17
**carefully** [1] - 11:5
**carrying** [1] - 21:9
**Caruso** [1] - 1:24
**case** [14] - 4:6, 5:11, 6:2, 6:6, 6:11, 6:15, 6:22, 7:12, 10:10, 12:13, 17:14, 17:25, 20:25, 22:6
**caused** [3] - 21:11, 23:19, 23:23
**causing** [1] - 24:12
**certain** [2] - 18:12, 26:6
**certified** [1] - 1:21
**challenge** [4] - 13:13, 19:15, 25:16, 25:21
**chance** [1] - 4:16
**change** [1] - 10:18

**charges** [8] - 10:10, 11:24, 12:1, 12:5, 12:10, 12:20, 13:7, 13:11
**chart** [1] - 17:4
**Chicago** [1] - 24:15
**cholesterol** [1] - 5:16
**circumstances** [1] - 17:14
**citizen** [4] - 20:14, 27:13, 27:16, 27:20
**civil** [1] - 20:19
**clarification** [1] - 4:14
**clear** [1] - 26:3
**CLEARY** [15] - 2:2, 3:9, 6:17, 6:19, 8:6, 9:15, 11:19, 18:3, 19:8, 20:11, 20:21, 23:21, 24:21, 28:1, 28:25
**Cleary** [8] - 3:9, 6:8, 7:3, 8:3, 9:12, 9:19, 11:15, 27:25
**CLERK** [1] - 28:17
**Code** [1] - 1:21
**color** [1] - 17:3
**comfortable** [1] - 14:7
**commenced** [1] - 12:11
**commerce** [2] - 21:11, 21:13
**communication** [3] - 3:19, 21:11, 21:13
**community** [1] - 3:15
**compel** [1] - 13:15
**concluded** [1] - 29:2
**concurrently** [1] - 15:10
**condition** [1] - 15:21
**conduct** [5] - 15:1, 17:15, 19:21, 19:24, 22:3
**confront** [1] - 13:14
**connection** [17] - 5:11, 6:10, 6:12, 7:1, 7:6, 14:1, 14:23, 16:4, 17:15, 18:14, 19:18, 19:21, 20:1, 20:4, 20:25, 21:23
**consecutively** [1] - 15:10
**consequence** [1] - 6:23
**consider** [3] - 16:24, 17:7, 17:25
**considerations** [1] - 21:24
**considered** [3] - 10:6, 20:4, 28:12
**consistent** [1] - 23:25

conspiracy [3] - 11:25, 12:18, 14:23
constitutes [1] - 20:9
constitutional [1] - 4:4
contains [1] - 8:8
CONTINUED [1] - 2:1
continuing [2] - 25:10, 28:22
controlled [2] - 24:8, 24:14
conversely [1] - 20:7
conviction [4] - 25:15, 26:22, 26:23, 27:17
convictions [1] - 12:4
copy [2] - 9:21, 10:1
correct [4] - 3:21, 6:16, 7:4, 12:1
counsel [4] - 3:3, 3:19, 25:25, 28:20
count [8] - 11:24, 11:25, 14:23, 15:4, 15:13, 15:17, 24:17
counts [4] - 3:20, 26:6, 26:8, 28:4
couple [3] - 5:19, 14:20, 26:1
course [2] - 12:10, 26:12
Court [7] - 1:24, 26:5, 26:6, 26:12, 26:15, 26:21, 28:14
COURT [27] - 1:1, 1:11, 3:2, 3:16, 3:23, 4:1, 6:18, 8:5, 9:12, 10:25, 11:15, 24:17, 24:22, 25:6, 25:8, 25:25, 26:24, 27:5, 27:10, 27:23, 27:25, 28:2, 28:4, 28:7, 28:18, 28:24, 29:1
court [5] - 4:8, 6:5, 13:16, 15:25, 16:18
Court's [1] - 23:22
courtroom [1] - 13:10
cover [1] - 17:3
covered [1] - 22:22
Crestor [1] - 5:16
crime [1] - 18:11
criminal [8] - 6:12, 10:10, 15:1, 15:7, 17:15, 17:17, 19:21, 22:3
Criminal [1] - 8:9
CRIMINAL [1] - 1:2
criminally [1] - 21:16
CRR [1] - 1:24
CSR [1] - 1:24
custody [2] - 15:18, 15:22

**D**

date [1] - 16:20
dated [1] - 9:19
days [1] - 5:19
deal [1] - 12:17
decided [4] - 13:9, 13:19, 22:5, 22:9
decision [8] - 4:5, 7:7, 13:21, 13:24, 14:2, 14:7, 14:9, 25:21
DEFENDANT [2] - 3:22, 28:6
defendant [4] - 26:4, 26:7, 27:13, 28:13
Defendant [3] - 1:6, 1:19, 2:3
defendant's [2] - 24:25, 28:8
defense [3] - 12:15, 13:15, 13:18
department [1] - 17:10
departure [1] - 17:24
deportation [1] - 27:17
deported [1] - 27:21
deposition [4] - 19:22, 20:8, 20:9, 22:7
derived [1] - 21:16
described [1] - 21:4
devised [1] - 21:3
direction [3] - 23:10, 23:15, 24:11
discretion [3] - 14:17, 15:11, 17:22
discussed [1] - 26:16
discussing [2] - 6:1, 7:8
Discussion [4] - 18:4, 19:9, 20:12, 20:22
dismiss [3] - 12:5, 12:19, 26:5
disposal [1] - 27:2
DISTRICT [3] - 1:1, 1:1, 1:11
District [1] - 26:19
doctors [1] - 5:13
document [4] - 8:7, 9:8, 9:10, 9:17
documents [3] - 5:11, 7:1, 19:13
doubt [2] - 13:12, 21:19
down [1] - 9:4
downward [1] - 22:11
during [1] - 22:21

**E**

education [2] - 5:8, 5:9
effect [1] - 19:13
eight [1] - 20:25
either [1] - 15:10
elements [1] - 25:5
ELIYAHU [1] - 1:5
engage [1] - 24:11
engaged [1] - 21:14
enter [2] - 3:3, 11:23
entered [1] - 26:11
entire [1] - 6:23
entirely [1] - 14:17
entirety [1] - 12:11
entitled [2] - 1:22, 19:7
ESQ [3] - 1:18, 2:2, 2:3
essentially [1] - 12:17
established [1] - 28:10
estate [3] - 23:7, 23:12, 23:17
event [1] - 18:24
evidence [1] - 13:13
excuse [5] - 15:20, 18:3, 19:8, 20:11, 20:21
expect [1] - 4:10
explain [1] - 6:17
explained [1] - 16:17
expressed [1] - 28:15

**F**

face [4] - 14:14, 14:20, 14:24, 15:5
fact [2] - 13:4, 28:10
facts [1] - 17:14
factual [1] - 24:17
fair [1] - 8:19
fall [1] - 17:19
false [6] - 4:9, 4:10, 21:7, 23:20, 23:24, 24:5
falsely [2] - 23:10, 23:15
familiar [1] - 7:3
family [1] - 14:11
fashion [1] - 22:5
Federal [1] - 8:9
federal [2] - 15:25, 16:18
few [1] - 21:24
file [1] - 25:16
fill [1] - 8:23

finally [1] - 27:12
fine [2] - 14:24, 15:6
firm [1] - 6:25
first [3] - 16:23, 16:24, 26:3
FISHMAN [1] - 1:14
flip [1] - 23:17
followed [1] - 15:13
following [1] - 1:21
follows [1] - 21:2
FOR [1] - 1:1
forced [1] - 14:1
forfeit [3] - 18:15, 18:24, 27:3
forfeiture [9] - 18:14, 19:11, 19:14, 19:17, 20:3, 22:19, 26:14, 26:20, 27:3
Forfeiture/ Restitution [1] - 26:17
forfeitures [1] - 18:12
form [2] - 9:1, 9:19, 10:5
Form [3] - 8:5, 8:8, 9:14
forth [2] - 18:16, 18:23
forward [1] - 22:3, 22:8
four [3] - 25:10, 25:12, 26:16
fraud [9] - 11:25, 12:18, 14:23, 21:4, 21:5, 21:9, 21:16, 24:12, 25:3
fraudulent [1] - 21:7
friends [1] - 3:14
front [4] - 8:7, 9:21, 10:1, 10:24
full [6] - 18:11, 19:19, 22:2, 22:18, 22:20, 26:21
funds [2] - 19:22, 27:3
furthering [1] - 21:9

**G**

given [1] - 7:25
Government [21] - 1:16, 3:5, 3:8, 12:5, 12:19, 13:11, 14:21, 16:5, 17:8, 18:7, 18:12, 18:15, 19:14, 19:16, 20:18, 22:4, 22:7, 22:10, 22:15, 22:20, 27:2
granted [1] - 26:6
greater [1] - 21:16
Grewal [2] - 3:6, 9:23

GREWAL [2] - 1:15, 3:6
grow [1] - 5:4
guidelines [14] - 16:25, 17:1, 17:7, 17:8, 17:9, 17:10, 17:13, 17:18, 17:20, 17:23, 18:7, 21:23, 22:1, 22:11
guilty [12] - 3:20, 4:5, 7:7, 11:24, 12:18, 13:2, 22:6, 22:10, 25:1, 26:4, 26:8, 28:6
Guilty [1] - 8:11
GURBIR [1] - 1:15
Gurbir [1] - 3:6

**H**

half [1] - 6:9
hand [2] - 13:18, 20:7
HARRIS [3] - 2:3, 3:10, 9:16
Harris [8] - 3:10, 6:8, 6:25, 7:3, 8:3, 9:2, 9:3, 9:12
heading [2] - 26:17, 26:18
hearing [1] - 19:6
held [5] - 18:4, 19:9, 20:12, 20:22, 24:13
HENRY [1] - 1:18
Henry [1] - 3:11
high [1] - 5:9
highlight [1] - 26:15
hold [1] - 13:21
Holdings [1] - 24:13
Honig [2] - 3:8, 9:24
HONIG [2] - 1:15, 3:7
Honor [24] - 8:6, 9:15, 9:16, 9:22, 10:3, 11:19, 18:3, 19:8, 19:10, 20:11, 20:13, 20:21, 24:20, 24:21, 24:25, 25:7, 26:1, 26:10, 27:1, 27:9, 27:12, 27:24, 28:21, 28:25
HONORABLE [1] - 1:11

**I**

Illinois [1] - 24:15
important [2] - 9:18, 14:11
impose [3] - 14:16, 15:9, 25:16

imprisonment [1] - 22:17
IN [1] - 1:1
include [1] - 18:20
included [1] - 24:19
including [2] - 16:11, 18:16
inconsistent [1] - 9:8
incorrect [1] - 4:11
indeed [1] - 22:6
indicated [1] - 11:17
indictment [15] - 3:18, 3:20, 11:23, 11:24, 11:25, 12:6, 12:10, 13:7, 21:4, 22:22, 26:4, 26:5, 26:7, 26:9, 28:5
induce [2] - 23:9, 23:14
inducements [1] - 14:4
information [5] - 7:11, 8:9, 19:23, 22:4, 22:8
initials [1] - 24:15
inquiry [2] - 24:17, 27:15
instructed [1] - 13:20
intend [1] - 3:19
intention [2] - 27:6, 27:8
intentionally [1] - 21:3
interstate [2] - 21:11, 21:13
Intrater [2] - 3:5, 24:24
INTRATER [12] - 1:16, 3:4, 24:19, 24:25, 25:7, 25:9, 26:1, 27:1, 27:8, 27:12, 27:24, 28:21
intrater [1] - 9:24
introduced [1] - 13:13
investment [1] - 21:4
investors [6] - 23:7, 23:9, 23:10, 23:14, 23:16, 24:6
involved [3] - 17:16, 21:15, 26:3
involving [1] - 24:11
issues [1] - 26:2
itself [1] - 20:9

**J**

jail [5] - 14:24, 15:5, 16:6, 16:7, 16:12
January [3] - 1:8, 3:1, 9:19
JERSEY [1] - 1:1

Jersey [6] - 1:8, 4:25, 24:7, 24:8, 24:14, 26:20
jewelry [1] - 18:20
JOEL [1] - 1:11
JUDGE [1] - 1:11
judgments [1] - 19:12
June [2] - 21:2, 23:5
jury [4] - 13:6, 13:9, 13:12, 13:20

**K**

keep [1] - 4:22
KLINGEMAN [4] - 1:18, 1:18, 3:11, 28:3
Klingeman [6] - 3:11, 6:4, 7:3, 8:3, 9:12, 28:2
knowing [2] - 21:15, 28:8
knowingly [4] - 21:3, 21:14, 24:11, 25:22
known [2] - 6:7, 6:22
KROVATIN [1] - 1:18

**L**

Lakewood [2] - 4:25, 5:1
last [1] - 8:16
lastly [4] - 17:24, 20:1, 20:16, 22:15
laundering [4] - 12:1, 12:18, 15:4, 24:23
lawsuits [1] - 20:19
lawyer [3] - 13:13, 17:2, 25:23
lawyers [7] - 4:15, 8:13, 8:18, 11:6, 14:10, 16:17, 17:9
learned [1] - 7:12
left [1] - 3:12
legal [3] - 7:25, 8:2, 19:12
letter [3] - 9:19, 9:23, 10:5
level [3] - 22:1, 22:11, 22:12
likely [2] - 27:18, 27:20
limitation [1] - 12:15
line [1] - 9:24
lined [1] - 23:16
list [1] - 18:20
live [2] - 4:24, 4:25
lived [1] - 5:1

LLC [1] - 1:18
located [1] - 24:7
look [1] - 18:17
looked [2] - 8:16
looks [2] - 17:2, 17:4
lost [1] - 17:16

**M**

MARK [1] - 2:3
mark [1] - 3:10
market [1] - 23:12
materially [1] - 21:6
Matter [1] - 29:2
matter [2] - 6:12, 13:4
matters [1] - 6:11
maximum [3] - 14:19, 14:24, 15:5
mean [2] - 10:23, 26:24
meaning [1] - 26:19
means [7] - 4:8, 6:14, 21:6, 21:10, 21:12, 27:2, 27:4
medication [1] - 5:15
meeting [2] - 7:20, 7:21
members [3] - 3:14, 14:10
merely [1] - 20:8
might [5] - 12:23, 13:16, 14:21, 17:3, 17:19
million [3] - 18:15, 19:1
mind [1] - 10:18
minute [1] - 12:24
minutes [2] - 14:20, 21:24
Miss [1] - 9:24
moment [1] - 4:15
Monday [2] - 3:18, 13:5
monetary [2] - 21:15, 24:11
money [15] - 12:1, 12:18, 14:25, 15:4, 15:6, 17:15, 18:15, 19:14, 21:6, 23:6, 23:9, 23:11, 23:14, 24:6, 24:23
monies [2] - 19:20, 22:21
months [6] - 7:14, 16:7, 16:15, 22:17, 22:24, 25:14
morning [1] - 8:17
motion [1] - 26:6
moved [1] - 26:5

MR [30] - 3:4, 3:6, 3:9, 3:10, 3:11, 6:17, 6:19, 8:6, 9:15, 9:16, 11:19, 18:3, 19:8, 20:11, 20:21, 23:21, 24:19, 24:21, 24:25, 25:7, 25:9, 26:1, 27:1, 27:8, 27:12, 27:24, 28:1, 28:3, 28:21, 28:25
MS [1] - 3:7
must [1] - 26:12

**N**

name [3] - 6:25, 24:13
necessary [1] - 19:13
need [5] - 4:14, 4:15, 17:25, 18:1, 19:5
nevertheless [1] - 10:5
NEW [1] - 1:1
New [6] - 1:8, 4:25, 24:7, 24:8, 24:14, 26:20
night [1] - 8:16
NO [1] - 1:2
nonetheless [1] - 27:14
number [4] - 11:22, 18:19, 18:22, 25:4

**O**

oath [3] - 3:23, 4:7, 19:22
objection [1] - 28:24
objects [1] - 18:21
obligation [1] - 13:2
obtain [1] - 19:16
obtained [2] - 21:6, 24:12
occur [1] - 12:13
OF [3] - 1:1, 1:3, 1:4
offense [8] - 19:5, 22:1, 22:5, 22:12, 22:19, 25:1, 25:5, 26:22
offenses [1] - 26:23
office [1] - 26:18
Office [1] - 26:19
Official [1] - 1:24
often [1] - 23:12
old [1] - 4:20
one [13] - 10:25, 11:24, 14:23, 15:13, 17:11, 18:3, 19:8, 20:11, 20:21, 24:19,

26:7, 26:8, 28:5
order [5] - 13:15, 18:1, 23:9, 23:14, 26:24
ordered [1] - 26:21
otherwise [1] - 18:25
outside [1] - 24:7
own [3] - 13:17, 17:11, 25:22

**P**

Padilla [1] - 27:15
page [6] - 20:25, 25:10, 25:11, 25:12, 26:16
pages [3] - 18:19, 18:23, 25:11
paid [5] - 19:20, 22:21, 26:21, 26:25, 27:7
papers [1] - 19:13
paragraph [1] - 26:18
parole [1] - 16:1
part [1] - 21:5
participated [1] - 21:3
parties [5] - 23:21, 25:4, 26:10, 26:13, 26:15
party [1] - 22:23
past [2] - 5:19, 7:14
PAUL [1] - 1:14
pay [1] - 15:16
payments [2] - 20:3
penalties [1] - 14:19
penalty [1] - 22:20
people [2] - 23:6, 23:10, 23:15, 23:19, 24:10
per [1] - 15:17
perhaps [1] - 6:17
period [6] - 6:20, 6:21, 6:23, 17:5, 22:17, 22:22
perjury [2] - 4:9, 22:21
permission [1] - 23:23
Permission [1] - 8:11
personal [1] - 18:22
phase [1] - 17:24
phone [1] - 7:18
pieces [3] - 18:22, 23:11, 23:17
PISANO [1] - 1:11
place [1] - 3:23
planning [2] - 13:4, 13:5
played [1] - 17:14
plea [30] - 9:18, 10:1, 10:4, 10:13, 10:15, 10:19, 10:21, 11:2, 11:9, 11:17, 11:23,

12:3, 12:9, 14:5, 14:13, 16:4, 16:10, 18:10, 18:17, 18:18, 20:16, 21:1, 25:9, 25:12, 26:10, 26:12, 26:16, 28:11, 28:12, 28:14

**PLEA** [1] - 1:5

**plead** [10] - 3:20, 4:5, 7:7, 12:14, 12:17, 13:2, 22:5, 22:10, 28:4, 28:6

**Plead** [1] - 8:11

**pleading** [3] - 24:25, 26:4, 26:8

**post** [1] - 5:9

**potential** [1] - 12:22

**Practice** [1] - 8:9

**preparation** [2] - 7:10

**presence** [1] - 3:13

**presently** [1] - 5:13

**pretenses** [1] - 21:7

**pretty** [1] - 16:1

**prevent** [1] - 20:19

**prices** [1] - 23:12

**probation** [2] - 15:19, 17:10

**PROCEEDING** [1] - 1:4

**proceeding** [4] - 6:6, 7:6, 7:11, 16:18

**proceedings** [1] - 1:22

**proceeds** [3] - 24:12, 25:2, 25:3

**profit** [1] - 23:17

**projects** [1] - 23:7

**promises** [1] - 21:7

**property** [8] - 18:12, 18:16, 18:22, 19:14, 19:16, 21:6, 21:15

**prosecuted** [1] - 4:9

**PROSKAUER** [1] - 2:2

**prove** [1] - 13:11

**proven** [1] - 21:18

**provide** [5] - 8:22, 8:24, 18:8, 19:23, 27:4

**provided** [3] - 16:25, 22:4, 22:8

**psychiatrists** [1] - 5:23

**psychologists** [1] - 5:23

**purchase** [1] - 23:11

**pursuant** [2] - 26:11, 28:14

**Pursuant** [1] - 1:21

## Q

**questions** [15] - 3:24, 4:2, 4:4, 4:6, 4:14, 6:24, 7:23, 8:12, 8:13, 8:20, 8:22, 11:8, 23:25, 24:19, 25:25

**quick** [1] - 8:16

**quite** [1] - 6:5

## R

**Rachael** [1] - 3:8

**RACHAEL** [1] - 1:15

**radio** [2] - 21:10, 21:13

**range** [4] - 16:14, 17:18, 17:20, 17:23

**read** [5] - 5:10, 9:4, 11:3, 11:5, 23:22

**real** [4] - 8:16, 23:7, 23:11, 23:17

**realize** [5] - 10:17, 12:8, 13:6, 14:16, 20:16

**reason** [2] - 9:7, 12:8

**reasonable** [4] - 13:11, 18:2, 21:19, 22:22

**receive** [2] - 12:23, 14:22

**received** [2] - 8:3, 19:20

**recent** [1] - 6:15

**recently** [1] - 6:22

**record** [6] - 1:22, 17:17, 18:4, 19:9, 20:12, 20:22

**recovered** [1] - 27:6

**redacted** [3] - 26:5, 26:8, 28:5

**reduced** [1] - 22:1

**reduction** [1] - 22:11

**reentered** [1] - 6:22

**regarding** [1] - 19:23

**regular** [1] - 5:13

**regularly** [1] - 5:15

**reinstated** [1] - 12:11

**related** [1] - 6:11

**relates** [1] - 12:22

**release** [3] - 15:18, 15:21, 22:18

**released** [1] - 15:17

**reliance** [1] - 24:5

**religious** [2] - 5:9, 18:21

**remain** [1] - 13:19

**remember** [1] - 6:24

**removal** [1] - 27:17

**Reporter** [1] - 1:24

**represent** [2] - 9:13, 11:15

**representations** [4] - 21:7, 23:20, 23:24, 24:6

**represented** [1] - 6:19

**representing** [3] - 6:4, 6:10, 6:21

**represents** [2] - 22:7, 24:23

**Request** [1] - 8:10

**requires** [2] - 8:10, 8:21

**resell** [1] - 23:17

**reserves** [1] - 26:20

**resolve** [2] - 10:9, 11:22

**respect** [3] - 19:11, 26:14, 27:2

**responsibility** [4] - 20:5, 20:10, 22:2, 22:9

**restitution** [11] - 18:11, 19:4, 19:6, 19:18, 20:1, 20:3, 22:18, 26:14, 26:22, 26:25, 27:4

**result** [4] - 14:25, 15:7, 21:25, 24:5

**return** [1] - 7:18

**returned** [1] - 15:21

**rights** [3] - 4:4, 13:22, 28:9

**ROBERT** [1] - 2:2

**Robert** [1] - 3:9

**role** [1] - 17:14

**ROSE** [1] - 2:2

**Rule** [5] - 8:5, 8:8, 9:14, 26:11, 28:14

**Rules** [1] - 8:9

**run** [1] - 15:10

## S

**s/Joanne** [1] - 1:24

**satisfied** [2] - 8:2, 28:22

**satisfy** [1] - 25:5

**Schedule** [3] - 18:17, 18:19, 18:25

**schedule** [1] - 28:15

**scheduled** [1] - 3:17

**scheme** [3] - 21:4, 21:6, 21:9

**school** [1] - 5:9

**seats** [1] - 3:12

**second** [6] - 18:3, 19:8, 20:11, 20:21, 26:10, 26:18

**Section** [3] - 1:21, 25:1, 25:5

**see** [2] - 18:18, 28:19

**seeing** [2] - 5:13, 6:25

**seek** [1] - 26:20

**sentence** [21] - 12:23, 14:14, 14:16, 14:22, 15:5, 15:12, 15:13, 16:4, 16:6, 17:19, 17:22, 18:2, 20:2, 22:16, 22:23, 25:13, 25:15, 25:16, 25:21, 27:21

**sentenced** [4] - 12:4, 12:9, 16:11, 16:15

**sentences** [2] - 15:9, 15:12

**sentencing** [7] - 12:19, 16:17, 16:20, 17:1, 20:4, 26:21, 28:16

**serve** [5] - 15:11, 15:12, 15:18, 16:1, 27:21

**services** [1] - 8:2

**set** [2] - 18:16, 18:23

**seven** [2] - 4:21, 4:23

**several** [1] - 7:14

**shown** [1] - 17:2

**sign** [3] - 9:10, 10:21, 19:12

**signals** [2] - 21:10, 21:12

**signature** [1] - 9:23

**signed** [5] - 8:6, 9:14, 9:23, 10:25, 11:2, 11:18

**silent** [1] - 13:19

**simply** [1] - 27:1

**SINGH** [1] - 1:15

**sit** [2] - 19:22, 22:6

**six** [3] - 24:20, 24:21, 25:4

**skimmed** [2] - 8:14, 9:6

**solicit** [1] - 23:6

**sometime** [2] - 6:1, 6:5

**somewhere** [4] - 16:6, 16:11, 22:16, 25:14

**sounds** [2] - 21:10, 21:12

**source** [1] - 22:21

**special** [1] - 15:16

**specific** [1] - 23:11

**specifically** [2] - 24:21, 25:2

**specified** [1] - 25:2

**spent** [2] - 6:1, 7:7

**standing** [1] - 3:12

**start** [2] - 3:18, 13:5

**statement** [1] - 4:8

**statements** [1] - 4:10

**states** [1] - 26:18

**STATES** [3] - 1:1, 1:3, 1:11

**States** [15] - 1:21, 3:6, 7:12, 10:7, 10:15, 19:19, 20:17, 21:1, 22:15, 26:19, 27:6, 27:13, 27:16, 28:13, 28:21

**statute** [1] - 12:14

**stenographically** [1] - 1:22

**steps** [1] - 16:23

**stipulate** [1] - 22:16

**stipulated** [1] - 21:5

**stipulates** [1] - 22:10

**stipulating** [3] - 21:1, 21:8, 21:14

**stipulation** [1] - 25:12

**stipulations** [2] - 21:18, 23:2

**subject** [2] - 27:17, 27:18

**submit** [1] - 20:8

**subpoenas** [1] - 13:15

**substance** [1] - 5:19

**suffice** [1] - 7:2

**supervised** [3] - 15:18, 15:21, 22:18

**supervisor** [1] - 9:25

**sworn** [1] - 13:10

## T

**television** [2] - 21:11, 21:13

**ten** [1] - 15:5

**term** [2] - 14:24, 15:18

**termination** [1] - 15:20

**terms** [8] - 10:14, 10:18, 11:13, 26:12, 26:13, 28:12, 28:15, 28:22

**testified** [1] - 13:14

**testify** [3] - 13:16, 13:17, 13:19

**THE** [31] - 1:1, 1:1, 1:11, 3:2, 3:16, 3:22, 3:23, 4:1, 6:18, 8:5, 9:12, 10:25, 11:15, 24:17, 24:22, 25:6, 25:8, 25:25, 26:24,

27:5, 27:10, 27:23, 27:25, 28:2, 28:4, 28:6, 28:7, 28:17, 28:18, 28:24, 29:1
**themselves** [1] - 7:15
**thereafter** [1] - 6:21
**therefore** [1] - 26:11
**they've** [1] - 7:12
**thinking** [1] - 14:9
**third** [1] - 17:24
**thirteen** [1] - 5:3
**thirty** [2] - 4:21, 4:23
**thirty-seven** [2] - 4:21, 4:23
**three** [7] - 15:19, 16:23, 22:11, 22:18, 23:25, 25:10, 25:11
**three-level** [1] - 22:11
**timely** [2] - 22:5, 22:9
**Title** [1] - 1:21
**today** [4] - 5:21, 5:25, 9:20, 10:13
**today's** [1] - 7:10
**top** [1] - 18:19
**total** [2] - 22:1, 22:11
**transacting** [1] - 25:1
**transaction** [1] - 24:11
**transactions** [1] - 21:15
**TRANSCRIPT** [1] - 1:4
**transcript** [1] - 1:21
**transmission** [1] - 21:12
**transmitted** [1] - 21:9
**Trenton** [1] - 1:8
**trial** [11] - 3:18, 4:3, 7:10, 12:11, 13:5, 13:6, 13:9, 13:20, 13:24, 14:5, 28:9
**truthful** [2] - 19:23, 22:8
**turns** [1] - 4:11
**twice** [2] - 14:25, 15:6
**two** [5] - 3:12, 3:20, 6:9, 15:22, 23:25

## U

**U.S** [4] - 1:14, 1:15, 1:15, 1:16
**ultimate** [1] - 14:22
**ultimately** [2] - 12:4, 12:9
**unanimous** [1] - 13:12
**under** [9] - 3:23, 4:7, 17:17, 19:22, 22:20, 26:16, 26:17, 27:15, 28:14
**UNITED** [3] - 1:1, 1:3, 1:11
**United** [15] - 1:21, 3:6, 7:12, 10:7, 10:15, 19:19, 20:17, 21:1, 22:15, 26:19, 27:5, 27:13, 27:16, 28:13, 28:21
**unlawful** [1] - 25:2
**up** [14] - 4:22, 5:4, 14:24, 15:5, 15:6, 15:13, 15:19, 15:22, 16:11, 16:15, 18:25, 23:16, 26:3
**urge** [2] - 17:8, 17:9

## V

**value** [2] - 18:23, 21:16
**various** [1] - 18:21
**victim** [1] - 24:14
**victims** [8] - 17:16, 18:11, 19:5, 22:19, 26:22, 26:25, 27:4, 27:7
**view** [1] - 22:8
**violate** [1] - 15:20
**voice** [1] - 4:22
**voluntarily** [3] - 9:14, 11:18, 25:22
**voluntary** [1] - 28:9
**vs** [1] - 1:4

## W

**waive** [3] - 13:24, 14:4, 25:14
**waiver** [5] - 4:3, 25:6, 25:9, 25:20, 28:9
**Weinstein** [20] - 3:2, 3:9, 3:10, 3:11, 3:17, 4:2, 6:20, 7:2, 8:7, 9:13, 9:17, 11:3, 11:16, 11:20, 23:5, 25:11, 27:7, 27:19, 28:4
**WEINSTEIN** [1] - 1:5
**Weinstein's** [1] - 3:14
**wife** [1] - 3:14
**wire** [9] - 11:25, 12:18, 14:23, 21:10, 21:12, 21:16, 24:6, 24:12, 25:3
**wired** [1] - 24:13
**witness** [2] - 13:14, 13:15
**words** [1] - 27:3
**writing** [2] - 8:20, 21:12
**writings** [1] - 21:10
**written** [4] - 8:21, 9:7, 9:19, 18:19
**wrote** [3] - 9:1, 9:4, 9:5

## Y

**year** [1] - 6:5
**years** [10] - 5:2, 5:3, 6:9, 14:24, 15:5, 15:19, 15:22, 16:9, 16:12, 22:18
**yup** [1] - 12:25

## Z

**ZACH** [1] - 1:16
**Zach** [1] - 3:5
**zero** [4] - 16:15, 22:16, 22:24, 25:14